18 P.3d 608 (2001)
105 Wash.App. 67
STATE of Washington, Respondent,
v.
James Patrick DONAHUE, Appellant.
No. 25140-0-II.
Court of Appeals of Washington, Division 2.
February 23, 2001.
*610 James J. Sowder, Attorney at Law, Vancouver, WA, Counsel for Appellant.
Jeannie Marie Bryant, Clark Co. Deputy Pros. Atty., Vancouver, WA, Counsel for Respondent.
*609 BRIDGEWATER, J.
James Patrick Donahue appeals his conviction for vehicular homicide, contending that evidence of his blood alcohol content was inadmissible. Although the auto accident occurred in Washington, a hospital in Oregon treated Donahue and administered blood tests. We hold that generally the place of treatment determines which physician patient privilege applies; thus, Oregon's law is applicable. Under Oregon law, the physician-patient privilege does not apply to criminal proceedings in Oregon; therefore, the physician-patient privilege does not bar the blood test results obtained at the Oregon hospital. Also, the blood test results were admissible, even though the test did not comply with methods approved by the Washington State Toxicologist, because it was "other competent evidence bearing" on whether Donahue was under the influence of intoxicating liquor. We affirm.
On July 11, 1997, James Donahue was driving his vehicle when it collided with another vehicle on a Washington highway. Donahue was seriously injured. Li Sheng Chiu, the driver of the other car, died and another passenger in that car was injured. Donahue was taken to Emmauel Hospital in Portland, Oregon, where the hospital took a draw of his blood and tested it on an Ektachem machine. This machine runs tests by spectrophotometry methods. In contrast, the approved method in Washington for testing blood alcohol concentration is gas chromatography according to procedures set by the Washington State Toxicologist. At trial, the Washington State Toxicologist testified that Washington's method of gas chromatography is not necessarily more reliable than the Oregon method of spectrophotometry employed by the Ektachem machine.
The blood test results from Emmanuel indicated that Donahue's alcohol level was .241. Washington Detective Stockwell obtained the blood alcohol test results from the hospital, but he did not ask for the blood sample or do independent tests. He testified that he did not think about asking the Oregon hospital for the blood sample for evidence. There is no state trooper protocol for dealing with an out-of-state hospital that has blood samples and has done blood alcohol tests. The Oregon hospital had the blood sample in its possession and disposed of it according to its standard procedure.
*611 The jury found Donahue guilty of one count of vehicular homicide and one count of vehicular assault.

I. PHYSICIAN-PATIENT PRIVILEGE
Donahue claims that his blood sample and the test results were privileged physician-patient information and that the court erred in admitting his blood test results. The State counters that the Washington physician-patient privilege does not apply because the evidence was obtained in Oregon and the communication took place in Oregon. The State submits that the evidence was admissible because under Oregon law the privilege did not apply.
The Restatement (Second) of Conflict of Laws provides that where communication evidence is privileged under the law of the local forum but is not privileged under the law of the state with the most significant relation to the communication, in this case Oregon, it will be admitted unless the admission of such evidence would be contrary to the strong public policy of the forum, i.e., Washington. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139(1) (1971).[1] Oregon is the state which has the most significant relationship with the communications.[2] Donahue was in a hospital in Oregon, and under the care of an Oregon doctor. The blood was drawn in Oregon. It is reasonable that Oregon law controls the extent of the physician-patient privilege. See State v. Eldrenkamp, 541 N.W.2d 877 (Iowa 1995).
Oregon's physician-patient privilege applies only in civil suits. ORS 40.235. Oregon courts have held that the privilege does not apply in criminal proceedings. State v. Betts, 235 Or. 127, 384 P.2d 198, 205 (1963). In addition, Oregon law expressly authorizes the disclosure of blood alcohol results by hospital staff to law enforcement. ORS 676.260. Accordingly, the blood test results from the Oregon hospital are admissible because they were lawfully obtained under Oregon law and did not violate the Oregon physician-patient privilege. There was no error based upon the physician-patient privilege.

II. RCW 46.61.502 AND STANDARDS FOR BLOOD ALCOHOL EVIDENCE
Donahue was charged with vehicular homicide by driving under the influence contrary to RCW 46.61.520(1)(a). RCW 46.61.520 provides:
(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:
(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or
(b) In a reckless manner; or
(c) With disregard for the safety of others.
Former RCW 46.61.502 (1994) is the driving while intoxicated statute.[3] It provides:
*612 (1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:
(a) And the person has, within two hours after driving, an alcohol concentration of 0.10 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506; or
(b) While the person is under the influence of or affected by intoxicating liquor or any drug; or
(c) While the person is under the combined influence of or affected by intoxicating liquor and any drug.
Former RCW 46.61.506 (1995) provides standards for testing evidence to determine if persons are under influence of an intoxicating liquor or drug. It provides in part:
(1) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor or any drug, if the person's alcohol concentration is less than 0.10, it is evidence that may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor or any drug.
(2) The breath analysis shall be based upon grams of alcohol per two hundred ten liters of breath. The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of intoxicating liquor or any drug.
(3) Analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.502 or 46.61 .504 shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. The state toxicologist is directed to approve satisfactory techniques or methods, to supervise the examination of individuals to ascertain their qualifications and competence to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state toxicologist.
RCW 46.61.502 describes a single offense that a driver might commit by more than one method. State v. Ortiz, 80 Wash. App. 746, 749, 911 P.2d 411 (1996) (citing State v. Franco, 96 Wash.2d 816, 821, 639 P.2d 1320 (1982)). A person may be guilty per se of violating the statute by driving under the influence if his blood alcohol level is 0.10 or higher as described in subsection (a). Former RCW 46.61.502(1)(a). A person may be found guilty for the non-per se violations of the statute by driving under the influence of intoxicating liquor or any drug as described in subsection (b), or by driving under the combined influence of intoxicating liquor and any drug in subsection (c). RCW 46.61.502(1)(b) and (c).
As the statute provides under subsection (a), if a person has a blood alcohol concentration of 0.10 or higher, according to the testing standards set out in RCW 46.61.506 and the methods approved by the Washington State Toxicologist, the person is guilty per se of driving under the influence of intoxicating liquor. The State has the burden of proving beyond a reasonable doubt that the 0.10 reading was correct, and the defendant may attack the accuracy of the reading. State v. Keller, 36 Wash.App. 110, 113, 672 P.2d 412 (1983). Here, an Oregon analyst did the testing of Donahue's blood according to Oregon standards and methods. It was not done according to the Washington method approved by the Washington State Toxicologist, and the Oregon analyst did not have a permit issued by the Washington State Toxicologist as required under RCW 46.61.506. Thus, the blood alcohol concentration results from the Oregon hospital are not admissible to prove Donahue was under the influence of alcohol under subsection (a) of former RCW 46.61.502(1).
Unlike the per se violation in subsection (a), subsection (b) does not refer to any standards or methods that must be followed when testing blood alcohol content. RCW 46.61.502(1)(b). Subsection (b) simply states that a person is guilty of driving while *613 under the influence if the person drives a vehicle "[w]hile the person is under the influence of or affected by intoxicating liquor or any drug[.]" RCW 46.61.502(1)(b). Thus, for non-per se offenses the test of admissibility is only whether the evidence proves the person was under the influence of or affected by intoxicating liquor or drug (e.g. field sobriety tests, other scientific tests, observation, smell, etc.). Unlike the per se offense, the defendant in this case may attack the accuracy and reliability of the technique or method used in analyzing the blood alcohol level and whether it meets the standards of ER 702 and ER 703. Thus, at trial even if the State proved beyond a reasonable doubt that the .241 reading was correct according to Oregon standards, the defendant could still further attack the accuracy of the standards and methods employed under Oregon law and whether the blood alcohol test result demonstrates that he was "under the influence of or affected by intoxicating liquor[.]" RCW 46.61.502(1)(b).
Donahue argues that although the non-per se offenses, RCW 46.61.502(1)(b) and (c), do not refer to the standards in RCW 46.61.506, the standards should nevertheless apply to the non-per se offenses because of the language contained in RCW 46.61.506(3). RCW 46.61.506(3) provides in part that: "Analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.502 or 46.61.504 shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose." Donahue does not distinguish between what is known as a "medical draw," which is used for treatment at the hospital, and a "legal draw," which is normally used in referring to a blood draw done according to the Washington State Toxicologist's methods. If Donahue's position were correct, evidence of a medical blood draw would never be admissible, even in a civil case.
This position would conflict with ER 702,[4] ER 703,[5] and the Supreme Court's decisions concerning admissibility of scientific evidence. The Supreme Court has stated that evidence deriving from a scientific theory or principle must meet three tests: (1) the theory or principle must have achieved general acceptance in the relevant scientific community; (2) the witness must qualify as an expert; and (3) the testimony must be helpful to the trier of fact. State v. Baity, 140 Wash.2d 1, 10, 991 P.2d 1151 (2000). Donahue's suggested restrictive reading would mean that the legislature intended to limit the type of evidence available in these cases and would make proof of non-per se offenses more difficult. This restrictive reading ignores the Supreme Court's holding in Curran, which discerned the legislative intent of RCW 46.61.506. State v. Curran, 116 Wash.2d 174, 182, 804 P.2d 558 (1991), overruled in part on other grounds, State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997).
In Curran, the court discussed an amendment to former RCW 46.61.502 in 1986 that included breath analysis in the per se offense but inadvertently excluded blood alcohol evidence from the per se offense. Curran, 116 Wash.2d at 180-81, 804 P.2d 558. The provisions under RCW 46.61.506(2) and (3) were the same as we consider today. The defendant argued that the amendments rendered blood alcohol evidence irrelevant and inadmissible. Noting that the legislature's intent in creating per se violations was to make convictions for driving under the influence easier to obtain, the court held that the State could use blood alcohol evidence to prove driving under the influence for the non-per se offenses. Curran, 116 Wash.2d at 180-182, 804 P.2d 558. The court stated:
[T]he language Curran relies on refers only to the per se crime of driving while *614 under the influence. Curran was not charged with the per se crime. RCW 46.61.506(2) specifically indicates constraints associated with the per se crime shall not limit the use of "other competent evidence" when a per se conviction is not sought. See, e.g., State v. McElroy, 553 So.2d 456, 458 (La.1989) (results of blood alcohol test not administered in accordance with statute admissible but would not give rise to presumption of intoxication). The blood alcohol evidence was properly admitted.
Curran, 116 Wash.2d at 182, 804 P.2d 558 (emphasis added).
Here, Donahue argues that the blood alcohol evidence from Oregon is inadmissible because it was not obtained in accordance with the procedures set forth in RCW 46.61.506. But Curran explains that the constraints in RCW 46.61.506 apply only to the per se offense of driving under the influence. Donahue's restrictive reading conflicts with subsection (2) of RCW 46.61.506, which states: "The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of intoxicating liquor or any drug." (Emphasis ours.) This statute would have been less ambiguous had subsection (2) appeared at the end of the RCW 46.61.506. But, it did not. The Supreme Court in Curran interpreted this statute to allow admission of the blood testi.e. other competent evidenceeven though it did not conform to the statutory per se offense.
Donahue was charged for vehicular manslaughter under RCW 46.61.520(1)(a), which incorporates all three subsections of driving under the influence in RCW 46.61.502(1)(a)(c). Donahue does not challenge the accuracy of the Oregon method on appeal. Moreover, the Washington State Toxicologist testified that Washington's method of gas chromatography is not necessarily more reliable than the Oregon method of spectrophotometry using the Ektachem machine. Thus, the trial court did not err in admitting the blood alcohol evidence from the Oregon hospital.

III. DUTY TO PRESERVE EVIDENCE
To comport with due process, the State has a duty to disclose material exculpatory evidence to the defense and a related duty to preserve such evidence for use by the defense. State v. Wittenbarger, 124 Wash.2d 467, 475, 880 P.2d 517 (1994). To be material exculpatory evidence, the evidence must possess an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Wittenbarger, 124 Wash.2d at 475, 880 P.2d 517.[6]
Here, the exculpatory value of the blood was not apparent; it was more than twice over the per se limit. There was no hint that the test results had been tampered with or that the test results were faulty. There was nothing to indicate that the blood sample contained any exculpatory value. Thus, it was not material exculpatory evidence. It was, at best, only potentially useful to the defense.
Failure to preserve potentially useful evidence does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the State. Wittenbarger, 124 Wash.2d at 477, 880 P.2d 517; Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).
In this case, Detective Stockwell had no reason to believe that the test results were faulty. He testified that he did not think about asking the Oregon hospital for the blood sample as evidence. There is no state trooper protocol for dealing with an *615 out-of-state hospital that has blood samples and has performed blood alcohol tests. Moreover, the blood sample was never in the possession of the police. The Oregon hospital had the blood sample and later disposed of it according to their standard procedure. There was no indication that the detective by design or with malice refused to obtain the blood sample. Contrary to Donahue's contentions, the officers' inability to smell alcohol at the scene of the accident does not contradict the blood alcohol evidence. There was no evidence of bad faith; thus, this assignment of error is meritless.

IV. EVIDENCE OF PEDESTRIAN
Donahue claims that evidence that a juvenile was seen walking along the highway within a half mile of the accident was relevant to prove that he may have swerved to avoid a pedestrian. This court reviews a decision to admit evidence for abuse of discretion. State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995). Abuse of discretion exists if a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons. Powell, 126 Wash.2d at 258, 893 P.2d 615.
To be relevant, evidence must have any tendency to make the existence of any fact of consequence to be more or less probable than it would be without the evidence. ER 401. Donahue asserts that the evidence of a young female at the corner of SR 14 and 15th Street, one-half mile from the scene of the accident 20 minutes before the accident, tends to prove another cause for his swerving. He contends that if he swerved to avoid the juvenile pedestrian, he may not have been the legal cause of the Chiu's death. But Donahue testified that he could not remember anything from the day of the accident. There is no evidence beyond speculation that the pedestrian was involved in the accident or in Chiu's death. Donahue's assertion that he swerved to avoid the pedestrian is speculative. The trial court was correct in refusing to admit the evidence.
Even if the evidence were relevant, the trial court's decision to exclude the evidence was proper under ER 403 because the dangers of confusing or misleading the jury outweighed the evidence's minimal probative value. ER 403. "[A]n appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court." Nast v. Michels, 107 Wash.2d 300, 308, 730 P.2d 54 (1986).
Affirmed.
HUNT, A.C.J., and MORGAN, J., concur.
NOTES
[1] Section 139 provides:

(1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.
(2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 (1971).
[2] Restatement (Second):

The state which has the most significant relationship with a communication will usually be the state where a communication took place, which, as used in the rule of this Section, is the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 cmt. e (1971).
[3] The legislature recently amended RCW 46.61.502(1)(a) and RCW 46.61.506(1) to change the alcohol concentration from .10 to .08. Except for this change, the current version of these statutes remains the same.
[4] "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise." ER 702.
[5] "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." ER 703.
[6] We examine this under the Wittenbarger standard because the State candidly admitted that the hospital would have saved the blood sample upon a phone call from the police. We were not asked to review this under the case law that provides investigating officers do not have a duty to seek out exculpatory evidence or conduct tests to exonerate a defendant. State v. Woolbright, 57 Wash.App. 697, 701-02, 789 P.2d 815 (1990); see also State v. Judge, 100 Wash.2d 706, 717, 675 P.2d 219 (1984); State v. Wasson, 54 Wash.App. 156, 161, 772 P.2d 1039, review denied, 113 Wash.2d 1014, 779 P.2d 731 (1989) (evidence which was not obtained cannot be preserved).