[No. 23941-1-III.   Division Three.   November 30, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. BERNARDENE CHARLEY, *Petitioner*.

*Tracy S. Collins*, for petitioner.

*Karl F. Sloan, Prosecuting Attorney*, for respondent.

¶1 SCHULTHEIS, J. — To provide conclusive evidence that a person has been driving under the influence of alcohol, the State must follow strict procedures for blood sampling and testing. RCW 46.61.506. Bernardene Charley was seriously injured in an automobile accident. While she was being treated for her injuries, two different hospitals took blood samples for medical purposes. Neither of these samples was preserved as required by the Washington regulation for proper blood sample analysis. WAC 448-14-020. The State later charged her with vehicular homicide and vehicular assault.

¶2 In a pretrial suppression hearing, the trial court found that one of the samples had been tested by the State without following the required procedures, and granted the motion to suppress that evidence. The results of the other sample were admitted, however, because the trial court

found that the blood had been tested by the hospital for medical purposes.

¶3 Ms. Charley appealed to this court for discretionary review, and the State cross-appealed. We granted review. Because we conclude that the trial court properly distinguished between blood tests performed by a hospital for medical purposes and blood tests performed by the State for investigative purposes, we affirm.

FACTS

¶4 Early in the morning on December 22, 2002, Ms. Charley's vehicle was involved in a rollover accident with another vehicle in Omak. She and two passengers were ejected from the vehicle. One of the passengers died, the other was seriously injured, and an occupant of the other vehicle died.

¶5 Ms. Charley was first treated at Mid Valley Hospital, which took blood samples within one hour of the accident and placed them in two vials provided by the hospital. These vials, referred to as sample A, contained an anticoagulant but were not preserved with an enzyme poison. They were kept refrigerated. Later that day, Ms. Charley was moved to Sacred Heart Medical Center's Intensive Care Unit in Spokane. Sacred Heart took blood sample B and tested it for medical purposes. The hospital's toxicology analysis showed a blood ethanol level of 0.108 grams per deciliter.[1]

¶6 After the investigation indicated that Ms. Charley was the driver of one of the vehicles and had been drinking alcohol, the Okanogan County Sheriff's Department obtained a search warrant for seizure of Mid Valley Hospital's sample A. These vials of blood were seized on December 26 by a deputy who called the Washington State Patrol Toxicology Laboratory for instructions on transporting the evidence. The deputy was warned that unpreserved blood may

---

[1] A deciliter is equivalent to 100 milliliters.

produce its own ethanol if allowed to get warm, so he packed the samples in ice and sent them by overnight air mail to the state lab. Sample A was then tested, showing a blood ethanol level of 0.19 grams per 100 milliliters. The State also obtained the results of sample B.

¶7 In Washington, a person is driving under the influence if, within two hours after driving, he or she has an alcohol concentration of at least 0.08 grams of alcohol per 100 milliliters of whole blood. RCW 46.61.502(1)(a); WAC 448-14-020(2). Based on the results of the blood tests on samples A and B, the State charged Ms. Charley with two counts of vehicular homicide (RCW 46.61.520) and one count of vehicular assault (RCW 46.61.522).[2] She moved to suppress the evidence on the ground that the blood tests did not comply with the requirements of RCW 46.61.506 and WAC 448-14-020.

¶8 In a memorandum opinion, the trial court concluded that sample A was inadmissible because the testing was done for forensic law enforcement purposes, not for medical purposes. The trial court found, however, that sample B was tested for medical purposes and was therefore admissible as scientific or expert evidence under the relevant rules of evidence.

## NONCONFORMING BLOOD ALCOHOL TESTS

¶9 On appeal, Ms. Charley challenges the trial court's decision to admit sample B, which was drawn and tested by a hospital for medical purposes. The State challenges the exclusion of sample A, which was drawn by a hospital for medical purposes but tested by the state toxicology lab for investigatory purposes. Because the findings of fact entered after the suppression hearing are unchallenged, they are verities on appeal. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). We review the conclusions of law de novo. *Id*.

---

[2] The charging document is not contained in the record.

¶10 Relevant to these facts, a driver is guilty of vehicular homicide if he or she causes the death of a person while under the influence of alcohol or any drug, as defined by RCW 46.61.502. RCW 46.61.520(1)(a). Similarly, a driver is guilty of vehicular assault if he or she causes serious bodily injury to another while under the influence of alcohol or any drug, as defined by RCW 46.61.502. RCW 46.61.522(1)(b). Driving under the influence may be proved in two different ways: by showing under RCW 46.61.506 that the driver's blood alcohol level was at least 0.08 within two hours after the accident (the "per se" method); or by the use of other evidence that the driver was under the influence of alcohol, any drug, or a combination of alcohol and any drug (the "other evidence" method). RCW 46.61.502(1); *City of Seattle v. Clark-Munoz*, 152 Wn.2d 39, 44, 93 P.3d 141 (2004).

¶11 To prove per se that a person was driving under the influence of alcohol, the State must comply with the blood sampling procedures of RCW 46.61.506:

(1) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor or any drug, if the person's alcohol concentration is less than 0.08, it is evidence that may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor or any drug.

(2) The breath analysis shall be based upon grams of alcohol per two hundred ten liters of breath. The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of intoxicating liquor or any drug.

(3) Analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.502 or 46.61.504 shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. The state toxicologist is directed to approve satisfactory techniques or methods, to supervise the examination of indi-

viduals to ascertain their qualifications and competence to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state toxicologist.

The state toxicologist's standards and procedures for analyzing a blood sample for alcohol are detailed in WAC 448-14-020. This regulation provides, in part, that a blood sample "shall be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration." WAC 448-14-020(3)(b).

¶12 Because a per se violation of RCW 46.61.502 is based on approved procedures for sampling, preserving, and testing the blood, the defendant is limited under the per se method to attacking the accuracy of the reading. *State v. Donahue*, 105 Wn. App. 67, 74, 18 P.3d 608 (2001); RCW 46.61.502(1)(a), .506(3). For a non-per-se violation of RCW 46.61.502, the test of admissibility is whether the evidence proves the driver was under the influence of alcohol and/or any drug. *Donahue*, 105 Wn. App. at 74. Accordingly, the defendant facing a non-per-se violation may attack the accuracy and reliability of the test technique or method used and whether it meets the standards of ER 702 (expert witnesses) and ER 703 (basis of the expert opinion). *Id.*

¶13 Here, the State stipulates that sample A, taken at Mid Valley Hospital for medical purposes within an hour after the accident, was treated with an anticoagulant but not an enzyme poison. Sample A was seized from Mid Valley Hospital by the State four days later and sent to the state toxicology lab for testing. Sample B, drawn for medical purposes by Sacred Heart Medical Center later on the day of the accident, was not treated with an anticoagulant or enzyme poison and was tested by the hospital according to its own procedures. Neither sample complies with the mandates of RCW 46.61.502(1)(a) and RCW 46.61.506 for per se evidence of intoxication. Consequently, the results of the blood tests must be excluded unless they are admissible as "other evidence" of intoxication under RCW 46.61-.502(1)(b) or (c). *Clark-Munoz*, 152 Wn.2d at 48 (noncon-

forming breath test); *State v. Curran*, 116 Wn.2d 174, 182, 804 P.2d 558 (1991) (nonconforming blood test); *Donahue*, 105 Wn. App. at 74-75 (nonconforming blood test).

¶14 We first note that the information charging Ms. Charley with vehicular homicide and vehicular assault is not contained in the record. If the State is seeking per se convictions of these crimes, both sample A and sample B must be excluded because they do not conform to RCW 46.61.502(1)(a), RCW 46.61.506, and WAC 448-14-020. Assuming, however, that the State also intends to prove violations of RCW 46.61.502 with "other evidence," we must examine whether the samples are admissible despite the fact that their tests do not conform to the statutes and regulations. *Clark-Munoz*, 152 Wn.2d at 44, 48.

██ ¶15 The trial court distinguished between sample A—taken for medical purposes but tested by the state toxicology lab—and sample B—taken and tested for medical purposes by Sacred Heart. Ms. Charley contends this court has concluded that any blood test that does not comply with the procedures of WAC 448-14-020(3)(b) is inadmissible, citing *State v. Bosio*, 107 Wn. App. 462, 468, 27 P.3d 636 (2001). However, the blood sample in *Bosio* was taken for police investigative purposes, not for medical purposes, and the State failed to prove that the sample was preserved by an enzyme poison. *Id.* at 467-68. Although the actual statutory charge is unclear in *Bosio*, the fact that the State argued it had satisfied the prima facie requirements of WAC 448-14-020 indicates that the defendant had been charged with a per se violation of vehicular assault. *Id.* at 466-67. RCW 46.61.502(1)(a) clearly provides that proof of a per se violation requires compliance with the procedures of RCW 46.61.506, as adopted in WAC 448-14-020. Consequently, *Bosio*, a per se violation case, is consistent with RCW 46.61.502(1)(a), but is distinguishable from any case that charges the defendant with a non-per-se violation of vehicular homicide or vehicular assault involving "other evidence" of driving under the influence. RCW 46.61-

.502(1)(b), (c); *Clark-Munoz*, 152 Wn.2d at 49; *Donahue*, 105 Wn. App. at 75-77.

¶16 Unlike the blood sample in *Bosio*, sample B was drawn and tested by the hospital for medical purposes. The hospital's conclusion that Ms. Charley's blood showed an ethanol level of 0.108 grams per deciliter is admissible as "other evidence" of intoxication under RCW 46.61.502(1)(b). *Clark-Munoz*, 152 Wn.2d at 49; *Donahue*, 105 Wn. App. at 74. Accordingly, the trial court did not err in denying Ms. Charley's motion to suppress sample B. The test of sample A, however, was conducted according to the procedures established by WAC 448-14-020. The trial court found this difference dispositive, ruling that once the State conducts a blood test according to the procedures of WAC 448-14-020, the admissibility of the results depends upon compliance with the regulation.

¶17 In *Clark-Munoz*, cited by the trial court, breath tests were conducted under RCW 46.61.506, but the State failed to show that the testing equipment met the appropriate standards. 152 Wn.2d at 48. Because the breath tests were for legal, not medical, purposes and were conducted by the State under the statute and regulations, *Clark-Munoz* held that they were not admissible as "other evidence" of intoxication. *Id.* at 48-49. The trial court here extrapolated from *Clark-Munoz* that any time breath or blood alcohol tests are conducted pursuant to RCW 46.61.506 and WAC 448-14--020, the State must establish that the tests meet the evidentiary standard for a per se conviction under RCW 46.61.502(1)(a):

> This court also finds it very unlikely that "any other competent evidence" includes (legal) *blood tests* taken under the very authority of that network of statutes. The Court [in *Clark-Munoz*] has already determined that "any other competent evidence" does include medical blood tests not taken or analyzed under the network of statutes.

Clerk's Papers at 26. This analysis comports with the conclusion reached in *Clark-Munoz* that "the legislature was drawing a distinction between tests performed by the

State and its agents, pursuant to statute, and other tests, such as tests done at the instigation of the defendant or for medical treatment. Such tests would be subject to the usual evidentiary checks." 152 Wn.2d at 49 (citing *Donahue*, 105 Wn. App. at 69, 75-76).

¶18 Although sample A was drawn for medical purposes, it was later seized and subjected to tests performed by the State and its agents pursuant to RCW 46.61.506(3) and WAC 448-14-020. Accordingly, the procedures followed in drawing, preserving, and testing sample A had to comply with the statute and regulation for admission as per se evidence of intoxication. *Clark-Munoz*, 152 Wn.2d at 49. Because the test was conducted under the authority of Washington law by State agents, its results were not admissible as "other evidence" of driving under the influence under RCW 46.61.502(1)(b) or (c). *Id.* Thus, the trial court did not err in granting Ms. Charley's motion to suppress sample A.

¶19 Affirmed.

SWEENEY, C.J., and KULIK, J., concur.

Review denied at 161 Wn.2d 1019 (2007).