# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DEBORAH PERALTA, | No. 45575-7-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON and WASHINGTON STATE PATROL, | PUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — Deborah Peralta filed a personal injury complaint against the Washington State Patrol (WSP) alleging negligence after WSP Sergeant Ryan Tanner struck her with his vehicle while she walked. After a jury trial, the trial court entered judgment against Peralta and dismissed her complaint and claim with prejudice pursuant to the intoxication defense of RCW 5.40.060. Peralta appeals, arguing that the trial court erred when it (1) ruled that Peralta's response to WSP's request for admission regarding intoxication constituted an admission that she was intoxicated for purposes of RCW 5.40.060, (2) entered judgment for WSP, (3) excluded hearsay statements about Tanner's speed, (4) excluded deposition testimony of two WSP employees, (5) excluded hearsay evidence about Tanner's headlights, (6) compelled Peralta to disclose the identity of her consulting witness, and (7) barred her from presenting an expert at trial. Peralta requests entry of judgment for the share of WSP's damages found by the jury or, in the alternative, for reversal and remand for a new trial.

First, the trial court incorrectly found that Peralta's admission of intoxication satisfied the statutory definition in RCW 5.40.060 and, as a result, it also incorrectly instructed the jury and incorrectly entered judgment for WSP. Second, the trial court erred when it excluded testimony of

two WSP employees without first ruling on whether they were speaking agents for WSP. Third, the trial court abused its discretion when it excluded prior consistent statements because there was an express or implied charge of recent fabrication. Fourth, the trial court should not have compelled Peralta to identify her consulting expert witness. Lastly, the record on appeal is insufficient for us to determine whether the trial court abused its discretion when it barred Peralta from presenting an alcohol expert at trial. Because the trial court erred, we reverse and remand for a new trial. We do not reach the remaining issues.

FACTS

I.    OVERVIEW

On the night of August 22, 2009, Peralta had been out with friends and had consumed alcohol. Peralta called her brother for a ride home. Following a misunderstanding regarding her location, Peralta's brother told her to come out into the street so that he could see her. Peralta was on the phone with her brother and stepped out into the street when Sergeant Tanner's vehicle struck her. She required hospitalization after sustaining serious injuries, including a brain injury.

Peralta filed a complaint for personal injury on December 2, 2010. In its answer, WSP asserted RCW 5.40.060's intoxication defense as one of its affirmative defenses. During discovery, WSP submitted to Peralta a request for admission regarding her intoxication at the time of the collision. It stated, "Admit or deny that, at the time of the collision that is the subject of this lawsuit, Deborah Peralta was under the influence of intoxicating liquors." Clerk's Papers (CP) at 146. Peralta responded, "Plaintiff admits." CP at 146. Peralta never objected to the request for admission or moved to withdraw her answer.

II.      PRETRIAL MOTIONS

A.      Intoxication Defense

WSP moved the trial court to rule that for purposes of its affirmative defense, Peralta was under the influence of intoxicating liquors as a matter of law and that she should be precluded from offering any evidence that she was not under the influence of intoxicating liquor at the time of the collision.

Peralta objected and argued that her admission to being under the influence of intoxicating liquors did not satisfy RCW 5.40.060(1) because the request for admission did not reference the definition of "under the influence of intoxicating liquor" contained in the statute. She further argued that she did not admit to that element.

The trial court granted the motion in limine.

B.      Evidence Regarding Tanner's Speed

WSP moved to exclude a paramedic's testimony regarding Tanner's speed because she could not identify Tanner as the source of the statement and it was hearsay. The paramedic, Heather Van Zandt, responded to the accident scene. She stated, "I stuck my head out [the window] and asked the speed of travel—someone yelled 40-50 mph." CP at 225.

In response, Peralta argued that this evidence was admissible as an admission by a party-opponent because Tanner admitted he responded to Van Zandt. In support of her position, Peralta submitted a portion of Tanner's deposition testimony in which he was asked about the statement to paramedics:

> Q. Do you recall her yelling out the window and asking what was the speed?
>         . . . .
> [Tanner]: I do recall at some point, I think—I'm not sure where they were at in the assessment or care of the patient. I recall one of the paramedics asking at some point—and I believe they were exiting the rear of the ambulance—for the approximate speed of the vehicle. And I recall saying about 40 miles per hour. I

3

don't believe I said 48 to 50 miles per hour. That could have been somebody else she asked. I'm not sure. I don't know.
. . . I recall answering that question with it about 40 miles per hour.

CP at 216-17. The trial court granted WSP's motion because insufficient evidence existed to believe that Tanner made the statement. However, the trial court invited Peralta to raise the issue again during the trial.

During Van Zandt's testimony and outside the jury's presence, Peralta again made an offer of proof, inquiring whether Van Zandt was required to obtain an estimate of speed when responding to a collision of this type. The trial court did not make a clear ruling on the issue on the offer of proof and only stated "I can't advise how to try the case, but at this point let's bring the jury back in and get her testimony, okay?" 2A Report of Proceedings (RP) at 252. Van Zandt did not testify regarding the speed of the car at the time of the collision in the jury's presence.

C.      Blood Alcohol Measurement and Consulting Expert Witness

At the hospital, a blood test established that Peralta had a 0.167 serum blood alcohol level. For discovery purposes, the parties agreed that Peralta would disclose her trial expert witnesses by March 13, 2012. Following this date, Peralta entered denials on two requests for admission that, at the time of the collision, Peralta had a serum blood alcohol level of not less than 0.167 grams per deciliter. Peralta refused to answer corresponding interrogatories that sought the reasons for her denial, along with statements, documents, or expert opinions relied upon. Peralta claimed that the requested information was work product and privileged.

WSP filed a motion to compel discovery. Peralta responded that her denials were based on a report written by a consulting expert who she did not intend to call as a witness at trial. She argued that his opinion was protected as work product. This expert, later identified as Dr. William

Brady, issued a written opinion in which he expressed doubt as to the reliability of the test establishing Peralta's serum blood alcohol level.[1]

The trial court heard this motion on June 29, 2012. The report of proceedings of this hearing is not contained in the record on appeal. During the hearing, counsel met outside the courtroom and came to an agreement. The trial court entered an order granting WSP's motion to compel, agreed upon by the parties, requiring the plaintiff to "disclose the specific reasons for her denials of the requests for admissions." CP at 107. The trial court further stated that "[t]o the extent Plaintiff challenges the validity of the blood test[,] she shall disclose each and every reason she contends the test was invalid." CP at 107. The order also precluded Peralta from calling any expert she had not already disclosed.

WSP moved to preclude Peralta "from introducing any evidence or questioning any witness concerning any opinions, criticisms, or statements of Dr. Brady" based on the trial court's previously entered order precluding Peralta from calling any expert not already disclosed. CP at 119. The trial court granted WSP's motion but invited Peralta to bring a motion to modify the trial court's previous order. Peralta did not seek modification.

III.    TRIAL

A.    Testimony

Tanner testified that when he hit Peralta, his speed was approximately 40 miles per hour, 5 miles per hour over the posted speed limit. He did not check his speedometer immediately prior to the collision, but he based his estimate on his training and experience. He said he saw Peralta

---

[1] Dr. Brady's report is not contained in the record on appeal. The only reference to the report is a letter from Dr. Brady to Peralta's trial counsel appended to Peralta's motions in limine filed on August 23, 2013.

in front of his vehicle immediately before impact, he applied his brakes, and he swerved to try to avoid hitting her.

The parties contested whether Tanner's headlights were on at the time of the collision. Peralta and Tanner testified that the headlights were on. Two witnesses, Rick Riddell and Guy Kirchgatter, testified that Tanner's headlights were off at first and then turned on. Riddell informed a law enforcement officer at the scene that Tanner's headlights were turned off.

Peralta tried to elicit testimony from Luann Pfleiger, Guy Kirchgatter's mother, about what Riddell and Kirchgatter told her they saw on the night of the accident regarding Tanner's headlights. WSP objected and argued the question called for hearsay. RP at 320. The trial court sustained the objection. Peralta argued that under ER 801(d)(1), it was an admissible, prior consistent statement in response to an implication of recent fabrication in WSP's opening statement. In opening statement WSP stated, "Now, unlike some of the witnesses whose testimony you will hear in this case who came up with their story several years after the event." 1 RP at 127. The trial court maintained its ruling on the objection after hearing from both parties regarding the claim of recent fabrication.

Ryan Taylor investigated the collision. He testified that a few days after the collision, he spoke to Peralta in the hospital, and she appeared conscious and alert during the interview. She admitted that she had been drinking on the night of collision and that she wanted a designated driver to drive her because she felt too impaired to drive. Peralta also told Taylor that she saw headlights approaching her prior to the collision and she walked out into the roadway.

During rebuttal, Peralta moved to publish a portion of WSP Sergeant Roy Rhine's deposition testimony to impeach Tanner's testimony that he saw Peralta before impact.[2] Peralta also offered a portion of WSP Detective David Ortner's deposition testimony to impeach Taylor's testimony that Peralta was alert and coherent during an interview at the hospital after the collision.[3] Neither Sergeant Rhine nor Detective Ortner testified at trial. WSP objected on the basis that Peralta had not established that Sergeant Rhine and Detective Ortner were unavailable as CR 32(a)(3) requires. Peralta argued that CR 32(a)(3)'s unavailability requirements did not apply because Sergeant Rhine and Detective Ortner were agents of WSP and therefore their deposition testimonies were admissible as admissions by a party-opponent under ER 801(d)(2). The trial court agreed with WSP and excluded the deposition testimony because Peralta did not demonstrate the witnesses' unavailability as CR 32(a)(3) requires.

B.      Jury Instructions

The trial court gave jury instruction 19 on the RCW 5.40.060 intoxication defense:

> It is a defense to an action for damages for personal injuries that the person injured was then under the influence of alcohol, that this condition was a proximate cause of the injury, and that the person injured was more than fifty percent at fault.

CP at 362 (Instr. 19).

During argument on jury instructions, the trial court again commented on Peralta's admission that she was under the influence at the time of the collision:

> I believe as a matter of law based upon the response to the CR 36 request for admissions, that that issue has been conclusively established in this case. That the Plaintiff admitted being under the influence of intoxicating liquor at the time of the collision. That's my ruling.

---

[2] Sergeant Rhine testified in his deposition that Tanner told him that he did not see Peralta before impact.

[3] Detective Ortner testified in his deposition that he was present during the interview with Peralta and she was "a little bit groggy, I guess, so to speak." Supp. CP at 529.

8A RP at 1723. Accordingly, the trial court gave jury instruction 20, that Peralta admitted to being

under the influence:

> To establish the defense that the person injured was under the influence, the defendant has the burden of proving each of the following propositions:
>
> First, that the person injured was under the influence of alcohol at the time of the occurrence causing the injury. *Plaintiff admits this element*.
>
> Second, that this condition was a proximate cause of the injury; and
>
> Third, that the person injured was more than fifty percent at fault.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved, then this defense has been established.

CP at 363 (Instr. 20) (emphasis added). Peralta took exception to this instruction.

C.      Verdict

The jury returned the following special verdict form, in relevant part:

> We, the jury, answer the questions submitted by the court as follows:
>
> . . . .
>
> QUESTION 3:        Was the plaintiff negligent?
>
>          ANSWER: yes . . .
>
> If you answered "yes" to Question 3, answer Question 4. If you answered "no" to Question 3, skip to Question 7.
>
> QUESTION 4:        Was the plaintiff's negligence a proximate cause of the injury or damage to the plaintiff?
>
>          ANSWER: yes . . .
>
> If you answered "yes" to Question 4, answer Question 5. If you answered "no" to Question 4, skip to Question 7.
>
> QUESTION 5:        Was the fact that plaintiff was under the influence of alcohol a proximate cause of her injury?

ANSWER: yes . . .

QUESTION 6:        Assume that 100% represents the total combined fault that proximately caused the plaintiff's injury. What percentage of this 100% is attributable to the plaintiff's negligence and what percentage of this 100% is attributable to the negligence of the defendant? Your total must be equal to 100%.

ANSWER:

To Plaintiff Deborah Peralta:        58%

To Defendant Washington State Patrol:        42%

QUESTION 7:        What is the total amount of plaintiff's damages?

Economic Damages:        $511,000

Non-economic Damages:        $750,000

TOTAL:        $1,261,000

CP at 387-88.

IV.    JUDGMENT

Peralta submitted a proposed judgment awarding her $529,620.00 in damages. Peralta argued that the jury's award of damages to her reflected its intent for her to recover damages. Peralta also argued that the jury instructions given to the jury only instructed that Peralta's damages would be reduced by her contributory negligence and intoxication, not barred. She argued, therefore, that under the law of the case, Peralta's intoxication could only reduce her damage award but not bar recovery. In support of her proposed judgment, Peralta submitted declarations from individual jurors who stated the jury intended Peralta to recover damages.

The trial court, over Peralta's objection, entered the following judgment:

Pursuant to RCW 5.40.060, the Complaint and Claims of the Plaintiff against Defendant State of Washington, Washington State Patrol shall be and the same are DISMISSED WITH PREJUDICE.

CP at 497. Peralta appeals.

9

ANALYSIS

I.  INTOXICATION

Peralta argues that the trial court erred when it ruled that her response to the request for admission that she was "under the influence of intoxicating liquors" constituted an admission that Peralta was under the influence for purposes of RCW 5.40.060(1).  Peralta argues that the trial court's ruling removed a "significant factual issue" from the province of the jury.  Br. of Appellant at 57.  We agree because WSP's request for admission did not define the term "under the influence" under the statutory definition.

A.  Standard of Review

When confronted with mixed questions of law and fact, we independently determine the law and apply it to the facts.  *Miller v. City of Bainbridge Island*, 111 Wn. App. 152, 161, 43 P.3d 1250 (2002).  Here, the trial court first had to interpret the intoxication standard provided by RCW 5.40.060.  Statutory interpretation is a question of law that we review de novo.  *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 726, 153 P.3d 846 (2007).  Then, the trial court had to determine the meaning of Peralta's admission in light of its interpretation of RCW 5.40.060.  We review questions of law and the application of the law to the facts de novo.  *Terry v. Emp't Sec. Dep't.*, 82 Wn. App. 745, 748-49, 919 P.2d 111 (1996).

B.  RCW 5.40.060 – Intoxication Defense

As part of tort reform, the legislature enacted RCW 5.40.060.  *Hickly v. Bare*, 135 Wn. App. 676, 685, 145 P.3d 433 (2006).  The statute sets forth the limited circumstances when a defendant may use the plaintiff's intoxication as a complete defense to an action for damages:

> Except as provided in subsection (2) of this section, it is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was *under the influence of intoxicating liquor* or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate

10

cause of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault. *The standard for determining whether a person was under the influence of intoxicating liquor or drugs shall be the same standard established for criminal convictions under RCW 46.61.502*, and evidence that a person was under the influence of intoxicating liquor or drugs under the standard established by RCW 46.61.502 shall be conclusive proof that such person was under the influence of intoxicating liquor or drugs.

RCW 5.40.060(1) (emphasis added).

Under RCW 46.61.502(1), driving under the influence may be established by proving that the driver's blood alcohol level was at least 0.08 within two hours after driving, or by proving that the driver was under the influence of alcohol, any drug, or a combination of alcohol and any drug. *State v. Charley*, 136 Wn. App. 58, 63, 147 P.3d 634 (2006). To prove driving under the influence of alcohol under the blood alcohol level prong, there must be compliance with proper blood sampling procedures. RCW 46.61.506; *Charley*, 136 Wn. App. at 63. To prove the other prong, evidence that "the ability to handle an automobile was lessened in an appreciable degree by the consumption of intoxicants or drugs" must be proved. *State v. Wilhelm*, 78 Wn. App. 188, 193, 896 P.2d 105 (1995); *see also State v. Hurd*, 5 Wn.2d 308, 105 P.2d 59 (1940).

C.      CR 36—Request for Admission

CR 36 provides, in part, that "[a] party may serve upon any other party a written request for the admission . . . of the truth of any matters . . . that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request." CR 36(a). "The purpose of CR 36 admissions is to eliminate from controversy undisputed factual matters, not legal conclusions." *Lakes v. von der Mehden*, 117 Wn. App. 212, 219, 70 P.3d 154 (2003). CR 36(a) expressly authorizes requests for admission that relate to application of law to fact, but a party is not required to admit legal conclusions under this rule. *Santos v. Dean*, 96 Wn. App. 849, 861, 982 P.2d 632 (1999).

The responding party may admit the request in full or in part, deny the request, set forth reasons the party cannot admit or deny the request, or object to the request. CR 36(a). A party may qualify her answer or deny only part of the matter for which the admission is requested, if good faith requires. CR 36(a). Requests for admission are deemed conclusively established under CR 36(b) unless the court permits amendment or withdrawal of the admission.

The purpose of CR 36 is to "'obtain admission of facts as to which there is no real dispute and which the adverse party can admit cleanly, without qualifications.'" *Reid Sand & Gravel, Inc. v. Bellevue Props.*, 7 Wn. App. 701, 704, 502 P.2d 480 (1972) (quoting *Weyerhaeuser Sales Co. v. Holden*, 32 Wn.2d 714, 726, 203 P.2d 685 (1949)).

D. Peralta's Admission Did Not Satisfy RCW 5.40.060(1)

"In interpreting a statute, the court should assume that the Legislature meant exactly what it said." *Geschwind v. Flanagan*, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993) (RCW 5.40.060 denied recovery to an intoxicated passenger injured by a defendant driver). Courts are obligated to give the plain language of a statute its full effect. *Geschwind*, 121 Wn.2d at 841. The legislature provided that the standard for determining whether a person was under the influence for purposes of establishing the first element of the defense "shall be the same standard established for criminal convictions under RCW 46.61.502." RCW 5.40.060(1). Because the legislature provided a definitional phrase, it must be given its full effect. Therefore, to bar recovery, it must be proven that the plaintiff was under the influence under the standard established by RCW 46.61.502.

Here, WSP's request for admission was much broader than the language of RCW 5.40.060(1). It merely asked whether Peralta was under the influence of intoxicating liquors at the time of the collision. CP at 146. It did not define "under the influence" as that phrase is used in RCW 5.040.060 and RCW 46.61.502. Standing alone, the phrase "under the influence" is

susceptible to different interpretations. In fact, the term "under the influence" is used in many other statutes without reference to the RCW 46.61.502 standard.[4]

In addition, lay opinion testimony on whether or not a person is "under the influence" may be admitted by the trial court without regard to the standard of RCW 46.61.502. *See State v. Brett*, 126 Wn.2d 136, 161, 892 P.2d 29 (1995). We note that the standard for intoxication may be different for operation of a vessel while under the influence of liquor or drugs than it is for operation of a motor vehicle under the influence. *See* RCW 90.56.540; RCW 46.61.502. Because WSP's request for admission and Peralta's subsequent response are not couched in relation to the proper standard, the trial court erred when it ruled that Peralta's admission conclusively established that she was under the influence as a matter of law.

WSP argues that any error was harmless because the record demonstrates her "significant intoxication." Br. of Resp't at 28. Errors that affect the outcome of the case are prejudicial and not harmless. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing*, 178 Wn. App. 702, 727, 315 P.3d 1143 (2013). Generally, "[i]t is well established that errors in civil cases are rarely grounds for relief without a showing of prejudice to the losing party." *Saleemi v. Doctor's Assocs., Inc.*, 176 Wn.2d 368, 380, 292 P.3d 108 (2013).

> "[E]rror without prejudice is not grounds for reversal." *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) (citing *Ashley v. Lance*, 80 Wn.2d 274, 282, 493 P.2d 1242 (1972)). "Error will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial." *Id.* (citing *James S. Black & Co. v. P&R Co.*, 12 Wn. App. 533, 537, 530 P.2d 722 (1975)).

*Saleemi*, 176 Wn.2d at 380.

---

[4] Pedestrians under the influence. RCW 46.61.266. Intoxicated bicyclists. RCW 46.61.790. Operation of a vessel while under the influence. RCW 90.56.540.

Here, the trial court's error tainted the entire trial because Peralta did not have the opportunity to present evidence rebutting the court's instruction to the jury that she was under the influence. Peralta had evidence through a witness, Christian Price, that she did not see Peralta consume alcohol and that Peralta did not seem drunk. However, the trial court did not allow her to present this evidence to the jury. Additionally, the trial court relieved WSP of the burden of establishing one of the elements of its defense when it instructed the jury that Peralta admitted she was under the influence of intoxicating liquor. The error necessarily affected the outcome of the trial because Peralta did not have the opportunity to present evidence on a key factual issue. Therefore, the error was not harmless.

E.     Jury Instruction 20 Erroneous

We review a trial court's decision on whether to give a jury instruction for an abuse of discretion. *Tuttle v. Allstate Ins. Co.*, 134 Wn. App. 120, 131, 138 P.3d 1107 (2006). But where a trial court's decision to give an instruction is based on legal ruling, we review it de novo. *Tuttle*, 134 Wn. App. at 131. Here, the trial court based its decision to give jury instruction 20 based on its erroneous interpretation that Peralta's admission satisfied the first element of RCW 5.40.060(1). Therefore, we conduct a de novo review.

Based on our previous holding, the trial court erred by giving instruction 20 and the error was not harmless.

II.     VERDICT AND JUDGMENT

Peralta next argues that, notwithstanding any other error, the trial court erred when it entered judgment for WSP, precluded Peralta from recovering damages, and dismissed her complaint with prejudice. Peralta argues that we should reinstate the jury verdict. We disagree.

14

"We review the legal effect of a jury verdict de novo." *McRae v. Tahitian, LLC*, 181 Wn. App. 638, 644, 326 P.3d 821 (2014). "Once a jury renders a verdict, the trial court must declare its legal effect and enter a judgment upon it where appropriate." *McRae*, 181 Wn. App. at 644; *see* CR 49, 58. A court may view a jury verdict in light of the trial evidence and jury instructions. *McRae*, 181 Wn. App. at 645. "A court liberally construes a verdict so as to discern and implement the jury's intent, if consistent with the law." *McRae*, 181 Wn. App. at 644.

A court must attempt to harmonize special verdict answers that conflict with each other. *Estate of Dormaier v. Columbia Basin Anesthesia, P.L.L.C.*, 177 Wn. App. 828, 866, 313 P.3d 431 (2013). "[W]here the answers are reconcilable, the trial court must enter judgment accordingly, and where the answers are irreconcilable, the trial court must order further deliberations or a new trial." *Dormaier*, 177 Wn. App. at 866. A court must presume that the jury properly followed the instructions it received. *Dormaier*, 177 Wn. App. at 867. And "a court must not 'substitute its judgment for that which is within the province of the jury.'" *Dormaier*, 177 Wn. App. at 867 (quoting *Blue Chelan, Inc. v. Dep't of Labor & Indus.*, 101 Wn.2d 512, 515, 681 P.2d 233 (1984)).

Here, the trial court instructed the jury on the law, but it did not instruct the jury on the effect of the law. In other words, the court told the jury to apportion fault if it found the plaintiff's negligence was a proximate cause of her injury. It did not tell the jury to not award damages to Peralta if it found her more than 50 percent negligent. The legal effect of the jury's finding is one for the court to determine, so there is no error. However, if the trial court had instructed the jury to not answer any more questions if it found Peralta to be more than 50 percent negligent, there would have been no confusion.

15

Because the trial court's previously discussed errors tainted the trial, we disagree with Peralta that entry of judgment is the correct remedy. Instead, we adhere to our holding that reversal and remand is appropriate.

III.    EVIDENTIARY ISSUES[5]

A.      Standard of Review

We review a trial court's evidentiary rulings for an abuse of discretion. *Mut. of Enumclaw Ins. Co.*, 178 Wn. App. at 728. A trial court abuses its discretion if its decision is manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons. *Mut. of Enumclaw Ins. Co.*, 178 Wn. App. at 728. "When a trial court makes an erroneous evidentiary ruling, the question on appeal becomes 'whether the error was prejudicial, for error without prejudice is not grounds for reversal.'" *Mut. of Enumclaw Ins. Co.*, 178 Wn. App. at 728-29 (quoting *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983)). If an error affects the outcome of the case, it is prejudicial and not harmless. *Mut. of Enumclaw Ins. Co.*, 178 Wn. App. at 729.

B.      Sergeant Rhine and Detective Ortner's Deposition Testimony

Peralta argues that the because both Sergeant Rhine and Detective Ortner are agents of WSP and therefore party-opponents, the trial court erred by excluding their deposition testimony that Tanner said he did not see Peralta prior to impact. WSP argues that the trial court properly excluded this evidence because it was not disclosed until rebuttal and Sergeant Rhine and Detective Ortner were not unavailable.

---

[5] Because these issues are likely to recur if the case is retried, we address them.

16

CR 32 governs the use of depositions in court proceedings. CR 32(a)(2) provides that "[t]he deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under rule [CR] 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose." Under ER 801(d)(2), statements by a party-opponent are not hearsay and admissible as an admission if the statement is offered against a party and is "the party's own statement, in either an individual or a representative capacity," "a statement by a person authorized by the party to make a statement concerning the subject," or "a statement by the party's agent or servant acting within the scope of the authority to make the statement for the party." ER 801(d)(2)(i), (iii), (iv). A party's agent must have speaking authority. *Codd v. Stevens Pass, Inc.*, 45 Wn. App. 393, 404, 725 P.2d 1008 (1986).

WSP did not designate Sergeant Rhine to testify on its behalf. The record is insufficient to determine whether WSP designated Detective Ortner to testify on its behalf. But neither of these deficiencies is dispositive because Peralta argues both troopers were WSP's agents because they had the authority to investigate collisions, make written findings, and file reports. Peralta argues that the troopers' statements were made in their representative capacity on WSP's behalf. The trial court was required to make these preliminary factual determinations.[6] It failed to do so.

---

[6] ER 104(a) provides: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court."

C.     Eyewitness Hearsay Statements

Peralta next argues that the trial court erred by excluding as hearsay certain eyewitness statements about Tanner's headlights.  She argues that the statements were admissible prior consistent statements because WSP alleged recent fabrication.

A prior consistent statement by a witness is not hearsay if it is consistent with the declarant's testimony and is used to rebut an allegation of recent fabrication.  ER 801(d)(1)(ii). When the conditions of ER 801(d)(1)(ii) are present and the witness's prior consistent statements were made before the date of facts from which the motive to falsify can be inferred, the prior consistent statement is relevant and may be admitted.  *State v. Harper*, 35 Wn. App. 855, 857, 670 P.2d 296 (1983).  Thus, there must be an express or implied charge of recent fabrication or improper influence or motive.  *See Harper*, 35 Wn. App. at 858.  In other words, a witness's prior consistent statements cannot be introduced merely to corroborate or bolster her testimony.  *Harper*, 35 Wn. App. at 857.  While "mere cross examination [or contradiction] of the witness cannot alone justify admission of prior consistent statements," a vigorous cross examination implying bias or fabrication may trigger ER 801(d)(1)(ii).  *State v. Dictado*, 102 Wn.2d 277, 290, 687 P.2d 172 (1984); *see* 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 801.25, at 374 (5th ed. 2007).

Here, WSP's opening statement implied that witnesses recently fabricated their testimony when WSP stated, "Now, unlike some of the witnesses whose testimony you will hear in this case who came up with their story several years after the event."  1 RP at 127. Because the State made this statement, the trial court erred in excluding the testimony.

IV.     COMPELLING PERALTA TO DISCLOSE CONSULTING EXPERT

Peralta further argues that the trial court erred by compelling her to disclose her consulting expert and his report. We agree because Dr. Brady was a consulting expert and not a testifying witness and the work product doctrine precluded the discovery of his identity and his report.

The discovery of the facts known and opinions held by nontestifying experts is limited. CR 26(b)(5)(B). "The opinions and even identities of these 'consulting experts' are protected because they are considered part of the party's team and their opinions are treated as work product." *Stevens v. Gordon*, 118 Wn. App. 43, 50, 74 P.3d 653 (2003) (quoting 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 39.4, at 398 (2015)). "Discovery of consulting expert opinions is restricted to that allowed by CR 35, relating to physical and mental examinations, and to that authorized by court order upon a showing of exceptional circumstances." *Stevens*, 118 Wn. App. at 50.

Here, the trial court did not find exceptional circumstances when it forced Peralta to disclose Dr. Brady. Peralta claimed she did not have to state her reasons when she denied WSP's request for admission that she had a 0.167 serum blood alcohol level. She refused to answer corresponding interrogatories seeking the basis of her denial, including reasons for her denial, and statements, documents, or expert opinions relied upon. She objected because the requested information was work product and privileged. WSP's motion to compel neither argued that CR 35 applied or showed exceptional circumstances for disclosure.[7] The trial court's order granting WSP's motion to compel does not include a finding of exceptional circumstances. Under these

_____

[7] The report of proceedings on this motion to compel is not part of the appellate record. However, the written motion is contained in the Clerk's Papers.

circumstances, the trial court erred by granting the motion to compel and by ordering Peralta to disclose the identity of her consulting expert and his report.[8]

We reverse the trial court and remand for further proceedings.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.

---

[8] Peralta also argues that the trial court erred by precluding her from calling an expert witness on alcohol. Because this sanction occurred during the motion to compel and because no transcript of the proceedings has been transmitted to us, we are unable to decide whether or not the trial court complied with *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 136 (1997), before imposing this extraordinary sanction.