195 P.3d 1017 (2008)
STATE of Washington, Respondent,
v.
Clifford J. GROGAN, Appellant.
No. 26511-1-III.
Court of Appeals of Washington, Division 3.
November 18, 2008.
*1019 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Appellant.
Mark E. Lindsey, Spokane County Prosecuting Attorney's Office, Spokane, WA, for Respondent.
BROWN, J.
¶ 1 Clifford Grogan appeals his first degree child molestation conviction, contending the trial court erred in allowing evidence of his statements and child hearsay statements. Finding no abuse of discretion, we affirm.

FACTS
¶ 2 One evening in summer 2001, Sandra Holloway, Mr. Grogan's stepdaughter, was bathing six-year old M.L. and M.L.'s sister at Mr. Grogan and Harriet Grogan's home in Cusick, Washington. M.L. told Ms. Holloway, "`Pap-pa' or `Pop-pa'`has touched me down there.'" 7 Report of Proceedings (RP) (Apr. 17, 2007) at 1276. When Ms. Holloway asked M.L. where she meant, M.L. pointed toward her vagina. M.L. also pointed toward Mr. and Mrs. Grogan. Ms. Holloway confronted Mr. and Mrs. Grogan, and then removed M.L. from the home. Ms. Holloway told Spokane Police Department Detective Kip Hollenbeck of M.L.'s statements. On November 24, 2001, M.L. and her mother, Sandra Bowyer, were found murdered.
¶ 3 In February 2003, Mr. Grogan voluntarily came in during the murder investigation for a polygraph examination conducted by Detective Douglas Orr in the Spokane Public Safety Building. Before and after the exam, Mr. Grogan was read and signed a waiver of rights form. Detective Orr told Mr. Grogan he thought he was lying. He was then interviewed by detectives without Miranda[1] warnings. The detectives told Mr. Grogan he was free to leave; Mr. Grogan agrees. Mr. Grogan's statements included his sex-offense history and thoughts of molesting M.L. Mr. Grogan did leave that afternoon after giving statements. He then learned police had seized his car.
¶ 4 In May 2006, the State charged Mr. Grogan with one count of first degree child molestation of M.L. Mr. Grogan's statements *1020 were allowed in evidence after a lengthy CrR 3.5 voluntariness hearing where custody was the sole dispute. The trial court ruled orally, but did not enter written findings. The hearing is factually developed in our analysis below. The court also held a pretrial child-hearsay hearing under RCW 9A.44.120 to determine the admissibility of M.L.'s statements to Ms. Holloway.
¶ 5 At the child-hearsay hearing, Dawn Scalise, M.L.'s grandmother, testified she had daily contact with M.L. during the spring and summer of 2001. Ms. Scalise testified Ms. Holloway returned M.L. to her after returning from the Grogan home. She testified M.L. was "rather quiet," "quieter than normal." 3 RP (Apr. 11, 2007) at 529, 538. When asked about M.L.'s capacity to tell the truth, Ms. Scalise testified M.L. was not the type of child who would tell lies, or who was prone to exaggerate events.
¶ 6 Ronald Bowyer, M.L.'s stepfather, Ms. Holloway's brother, and Mr. Grogan's stepson, testified by video deposition. Mr. Bowyer testified M.L. would make up stories, and at times, he would have to help her understand the difference between right and wrong.
¶ 7 The court ruled M.L.'s statements to Ms. Holloway admissible after considering the Ryan[2] factors and the elements of the child hearsay statute, RCW 9A.44.120. The trial court made specific findings on each Ryan factor that are detailed in our analysis below. Regarding corroboration for unavailable witnesses as required by RCW 9A.44.120, the court found sufficient: Mr. Grogan's statements to the detectives; evidence from the State regarding Mr. Grogan's prior bad acts, and Ms. Scalise's testimony that she noticed a change in M.L.
¶ 8 The jury heard the CrR 3.5-hearing evidence and the child-hearsay hearing evidence. Ms. Scalise testified during her life, M.L. referred to Mr. Grogan as both "Pop-po" and "Pop-pa." 7 RP (Apr. 17, 2007) at 1335-336. Mr. Bowyer testified that after M.L.'s funeral, Mr. Grogan told him, "I touched [M.L.] inappropriately." Pl's. Ex. 15 at 15:44:09.
¶ 9 Mr. Grogan did not call witnesses. The jury found Mr. Grogan guilty as charged. The court sentenced Mr. Grogan to life in prison without the possibility of early release as a persistent offender. He appealed.

ANALYSIS

A. Mr. Grogan's Statements
¶ 10 The issue is whether the trial court erred in ruling Mr. Grogan's statements given in response to police interrogation without Miranda warnings were admissible because the statements were not given while he was in custody.
¶ 11 The trial court did not enter written findings of fact and conclusions of law following the CrR 3.5 hearing. The rule provides the court must state in writing: "(1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor." CrR 3.5(c). Nonetheless, "failure to enter findings required by CrR 3.5 is considered harmless error if the court's oral findings are sufficient to permit appellate review." State v. Cunningham, 116 Wash.App. 219, 226, 65 P.3d 325 (2003) (citing State v. Smith, 67 Wash.App. 81, 87, 834 P.2d 26 (1992)), aff'd, 123 Wash.2d 51, 864 P.2d 1371 (1993). Here, the trial court's oral findings are sufficient.
¶ 12 We review the trial court's decision after a CrR 3.5 hearing by determining whether substantial evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law. State v. Broadaway, 133 Wash.2d 118, 130-31, 942 P.2d 363 (1997). "`Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" State v. Solomon, 114 Wash. App. 781, 789, 60 P.3d 1215 (2002) (quoting State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999)). Further, "the court must determine de novo whether the trial court `derived proper conclusions of law' from its findings of fact." Id. (quoting State v. Armenta, *1021 134 Wash.2d 1, 9, 948 P.2d 1280 (1997)).
¶ 13 "The Fifth Amendment right against compelled self-incrimination requires police to inform a suspect of his or her Miranda rights before a custodial interrogation." Cunningham, 116 Wash.App. at 227, 65 P.3d 325 (citing State v. Baruso, 72 Wash. App. 603, 609, 865 P.2d 512 (1993)). Thus, "[w]hether an officer should have given Miranda warnings to a defendant depends on whether the examination or questioning constituted (1) a custodial (2) interrogation (3) by a state agent." Solomon, 114 Wash.App. at 787, 60 P.3d 1215 (citing State v. Post, 118 Wash.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992)). Here, the sole element at issue is if the questioning was custodial.
¶ 14 "A defendant is in custody for purposes of Miranda when his or her freedom of action is curtailed to a `degree associated with formal arrest.'" Id. (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)). "Custody is a mixed question of fact and law." Id. (citing Thompson v. Keohane, 516 U.S. 99, 112-13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). "The factual inquiry determines `the circumstances surrounding the interrogation.'" Id. (quoting Thompson, 516 U.S. at 112, 116 S.Ct. 457). "The legal inquiry determines, given the factual circumstances, whether `a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" Id. at 787-88, 60 P.3d 1215 (alteration in original) (quoting Thompson, 516 U.S. at 112, 116 S.Ct. 457). "[T]he reviewing court applies an objective test to determine the ultimate inquiry: whether there was a formal arrest or restraint of the defendant to a degree consistent with formal arrest." State v. Rehn, 117 Wash.App. 142, 153, 69 P.3d 379 (2003) (citing Thompson, 516 U.S. at 113, 116 S.Ct. 457; Solomon, 114 Wash.App. at 788, 60 P.3d 1215).
¶ 15 First, addressing lack of written findings on the CrR 3.5 hearing, the trial court orally found:
[Mr. Grogan] came in voluntarily; he wasn't forced or compelled to come into the Public Safety Building; he was not placed under formal arrest. We know that because he was freehehe left with his wife after thethe interview was concluded. He was told that he could leave at any time; he acknowledged that he was told he could leave at any time. He was given coffee. He asked to use the restroom and was allowed to use the restroom.
3 RP (Apr. 11, 2007) at 465. Mr. Grogan does not raise any coercion issues.
¶ 16 Mr. Grogan testified he voluntarily came in for the polygraph examination, was not handcuffed or arrested, and was allowed to leave that day. Mr. Grogan concedes the detectives told him he was free to leave at any time. Although Mr. Grogan testified otherwise, Detective Hollenbeck testified Mr. Grogan first asked to leave at 4:45 p.m., and was allowed to leave immediately. Other detectives agreed with Detective Hollenbeck. Detective Minde Connelly testified without contradiction that Mr. Grogan was allowed to use the restroom and was given coffee.
¶ 17 Second, the trial court properly concluded Mr. Grogan was not in custody. See Solomon, 114 Wash.App. at 789, 60 P.3d 1215. The facts do not show "a formal arrest or restraint of the defendant to a degree consistent with a formal arrest." Rehn, 117 Wash.App. at 152, 69 P.3d 379 (citing Thompson, 516 U.S. at 113, 116 S.Ct. 457; Solomon, 114 Wash.App. at 788, 60 P.3d 1215).
¶ 18 The polygraph examination took a little over an hour, and then during a short break, Mr. Grogan was walked to another office and interviewed in a non-coercive atmosphere. Mr. Grogan sat alone while Mrs. Grogan was interviewed. A detective asked Mr. Grogan if he wanted to wait for Mrs. Grogan or leave the building, but he chose to stay. Mr. Grogan was not aware his vehicle was seized until he departed. No door key or police escort was needed to leave the interview area, ordinary, unlocked interview rooms. Given all, a reasonable person would have felt free to leave. See Solomon, 114 Wash.App. at 787-88, 60 P.3d 1215. Even though Mr. Grogan responded to police interrogation, he was not in custody. Thus, no *1022 Miranda warnings were required. See Solomon, 114 Wash.App. at 787, 60 P.3d 1215.
¶ 19 Mr. Grogan contends the procedure used by the detectives is substantially equivalent to the procedure condemned in Missouri v. Seibert. See Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). Missouri v. Seibert considered an interrogation technique where a law enforcement officer questions a witness first, then gives Miranda warnings, and attempts to elicit the same answers given before the warnings. Seibert, 542 U.S. at 604-07, 124 S.Ct. 2601. Here, this technique was not used. Missouri v. Seibert is inapplicable.
¶ 20 For the first time on appeal, Mr. Grogan argues if his statements are suppressed, the remaining evidence is insufficient to establish the corpus delicti of first degree child molestation. We decline to reach Mr. Grogan's argument because as reasoned above, the trial court properly admitted his statements, and because the corpus delicti rule is purely a rule of evidence, it cannot be raised for the first time on appeal. State v. Dodgen, 81 Wash.App. 487, 492, 915 P.2d 531 (1996). Mr. Grogan concedes, "the only independent evidence which would tend to corroborate his statements was M.L.'s interactions with Ms. Holloway." Appellant's Br. at 16. Concerning the corroborative requirements of RCW 9A.44.120, we next turn to M.L.'s statements.

B. M.L.'s Statements
¶ 21 The issue is whether the trial court erred in ruling admissible M.L.'s non-testimonial statements to Ms. Holloway under RCW 9A.44.120. Mr. Grogan contends the record does not support (1) M.L.'s competency; (2) statutory requirements; and (3) the Ryan reliability factors.
¶ 22 RCW 9A.44.120 allows admission of certain hearsay statements made by a child. The statute partly provides:
A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another ... is admissible in evidence in... criminal proceedings ... in the courts of the state of Washington if:
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
RCW 9A.44.120.
¶ 23 "[A] child's competence to testify at trial is not relevant to the issue of whether her hearsay statements are admissible." State v. Borboa, 157 Wash.2d 108, 120, 135 P.3d 469 (2006); see also State v. C.J., 148 Wash.2d 672, 684-85, 63 P.3d 765 (2003) (a separate finding of testimonial competence is not required for admission of child hearsay under RCW 9A.44.120). "Admissibility under [RCW 9A.44.120] does not depend on whether the child is competent to take the witness stand, but on whether the comments and circumstances surrounding the statement indicate it is reliable." C.J., 148 Wash.2d at 685, 63 P.3d 765. Therefore, the critical question is whether sufficient reliability existed to admit M.L.'s statements under RCW 9A.44.120.
¶ 24 A trial court's decision to admit evidence under RCW 9A.44.120 is reviewed for an abuse of discretion. C.J., 148 Wash.2d at 686, 63 P.3d 765. "A trial court abuses its discretion only when its decision is manifestly unreasonable or is based on untenable reasons or grounds." Id. We apply the Ryan factors to determine if a child's hearsay statements should be deemed reliable:
"(1) [W]hether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness[;] ... [(6)] the statement contains *1023 no express assertion about past fact[;] [(7)] cross examination could not show the declarant's lack of knowledge[;] [(8)] the possibility of the declarant's faulty recollection is remote[;] and [(9)]the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement."
Borboa, 157 Wash.2d at 121-22, 135 P.3d 469 (quoting State v. Ryan, 103 Wash.2d 165, 175-76, 691 P.2d 197 (1984)). Not all of the factors must be satisfied for admissibility, but the factors must be "substantially met." State v. Woods, 154 Wash.2d 613, 623-24, 114 P.3d 1174 (2005).
¶ 25 The trial court orally considered each Ryan factor: (1) "I heard testimony that [M.L.] got along very well [with Mr. Grogan]... I don't see that there was any sort of motive to lie"; (2) "Ms. Scalise said [M.L.] was a truthful and honest child ... she was generally a truthful child"; (3) solely Ms. Holloway heard the statement; (4) the first statement by M.L. was spontaneous, and although M.L.'s pointing was done in response to a question, "the statements came fairly quickly and were not prompted by anyone or anything"; (5) "[t]his was Ms. Holloway, who apparently was assuming some sort of a caretaking function for [M.L.] ... apparently, [M.L.] felt comfortable enough for Ms. Holloway to assist her with her bath and comfortable enough to make this type of disclosure"; (6) discussed, but no finding made; (7) "if [M.L.] took the stand, it would be just like any other situation where ... you might get some details; you may not get some details"; (8) "[i]t was a spontaneous situation. [M.L.] ... felt comfortable enough to disclose that information to someone"; and (9) when Ms. Holloway asked her who touched her, [M.L.] "pointed directly in the direction of [Mr. Grogan]." 5 RP (Apr. 13, 2007) at 1001-04.
¶ 26 The trial court applied the correct criteria and gave tenable reasons and grounds to conclude that M.L.'s statements were reliable. See C.J., 148 Wash.2d at 686, 63 P.3d 765. While factors (3), (6), and (7) did not indicate reliability, the factors were "substantially met." Woods, 154 Wash.2d at 623-24, 114 P.3d 1174. Accordingly, the trial court did not abuse its discretion in finding M.L.'s statements admissible under RCW 9A.44.120.
¶ 27 Again, Mr. Grogan contingently argues absent his statements to law officers, insufficient evidence corroborates statements admitted under RCW 9A.44.120. Again, because the trial court properly admitted Mr. Grogan's statements, little discussion is merited, but we note in passing that his argument overlooks his statements about M.L. to Mr. Bowyer who is not a law enforcement officer. In sum, the trial court did not abuse its discretion in ruling admissible the statements M.L. gave to Ms. Holloway.
¶ 28 Affirmed.
WE CONCUR: KULIK, A.C.J., and SWEENEY, J.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] State v. Ryan, 103 Wash.2d 165, 691 P.2d 197 (1984).