FILED
COURT OF APPEALS
DIVISION II

2014 FEB 20 AM 9: 28

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43915-8-II |
| Respondent, | |
| v. | |
| VICTOR WHALEN, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Victor Whalen appeals his conviction for attempted motor vehicle theft. He argues that the evidence is insufficient to support his conviction and that the trial judge violated the appearance of fairness doctrine by not disclosing that the judge had once represented Whalen. He also includes a statement of additional grounds (SAG) alleging that his counsel was ineffective and that his statements to police should have been suppressed. The evidence is sufficient to support Whalen's conviction, he waived his appearance of fairness argument by not objecting below, and neither of the issues in his SAG requires reversal. We affirm.

## FACTS

Richard Leventon had parked his Isuzu Rodeo in a gravel lot at the corner of Highway 6 and Scheuber Road. People often parked their vehicles in the lot when they were trying to sell them. At about 1:30 A.M. on June 12, 2012, Deputy Brady Taylor drove past the gravel lot and noticed that the Isuzu's hazard lights were flashing. Taylor had noticed the Isuzu parked in the lot earlier in the day, and its hazard lights were not flashing at that time. Taylor entered the parking lot to investigate and noticed someone crouched down and moving along the passenger side of the Isuzu. The person stood up when he reached the front of the car and ran south across Highway 6 into a field. He was wearing a dark shirt or coat with red or orange stripes on the

sleeves. He fled into a swampy area near the river, and Taylor called for backup, including a K-9 unit.

While waiting for the K-9 unit, Taylor heard something moving in the water. The dog initially tracked a scent to the water's edge, near some recently disturbed bushes. The dog handler was not able to safely follow the track into the water. The dog then tracked a scent to a white Dodge Neon parked in a driveway on Scheuber Road. The police had recently received a "suspicious vehicle" call regarding the Neon. Report of Proceedings (RP) (Aug. 15, 2012) at 89.

The police inspected the Isuzu and found that the passenger door's keyhole and the steering column were damaged, and there were two screwdrivers,[1] a Global Positioning System (GPS), and pieces of the steering column lying on the seats and floorboard. The police contacted Leventon and he stated that the vehicle was clean, locked, and undamaged when he last saw it and that the screwdrivers and GPS were not his.

Several hours later, at about 7 A.M., Officer Michael Lowrey was driving on Highway 6 near Scheuber Road when he noticed Whalen walking across a field, coming from the direction of the river. Whalen's clothing fit the description of the suspect from the attempted vehicle theft, so Lowrey stopped to talk to him. Lowrey noticed that Whalen was soaking wet and covered in grass. When Lowrey asked Whalen what he was doing in the area, Whalen said he was "taking a walk" and "looking for a fishing hole." RP (Aug. 15, 2012) at 117. When asked why he was wet, Whalen first said it was from the rain. Lowrey pointed out that it had just now started sprinkling. Whalen then said he had fallen into the river while looking for a place to fish. He

---

[1] Screwdrivers are commonly used to steal vehicles; they can be jammed into the ignition to force the vehicle to start without a key.

later said he was wet from falling onto wet grass. Lowrey called for a deputy who arrested Whalen.

The deputy searched Whalen incident to his arrest and found a car key. The car key started the white Neon. Whalen admitted that he had been driving the white Neon and that he had walked by the Isuzu the morning of the attempted theft. Taylor confirmed that the sweatshirt Whalen was arrested in matched the shirt of the person he had seen at the Isuzu.

The State charged Whalen with attempted motor vehicle theft. The jury found Whalen guilty as charged. At sentencing, Whalen spoke on his own behalf and, when asking the trial court for leniency, mentioned that the sentencing judge had represented Whalen when Whalen was a teenager. The trial court sentenced him to 42.75 months of confinement. Whalen appeals.

ANALYSIS

I. INSUFFICIENT EVIDENCE

First, Whalen argues that the State failed to present sufficient evidence that he committed attempted motor vehicle theft. The evidence placed Whalen in the area at the time of the crime and Whalen matched the description of the person Taylor saw at the Isuzu. There is sufficient evidence for the jury to conclude that Whalen was guilty of attempted motor vehicle theft.

Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the

43915-8-II

trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

A person is guilty of attempted motor vehicle theft if, with intent to commit motor vehicle theft, he takes a substantial step toward committing motor vehicle theft. RCW 9A.28.020(1). A person commits motor vehicle theft if he wrongfully obtains or exerts unauthorized control over another's vehicle with intent to deprive him of the vehicle. RCW 9A.56.020(1)(a); RCW 9A.56.065(1).

Here, there is sufficient evidence that Whalen took a substantial step toward committing motor vehicle theft. The Isuzu's door and steering column had been damaged, the hazard lights were on, and there were screwdrivers—tools often used in motor vehicle thefts—on the seats and floorboard. The only person in the area when the attempted theft was discovered matched Whalen's description. Taylor saw someone wearing the same shirt as Whalen skulking around the Isuzu; the person then took off toward the river; Taylor heard noises in the water; the K-9 unit dog tracked a scent to the water and to the white Neon Whalen was driving; and Lowrey later saw Whalen walking from the direction of the river, drenched and covered in grass. When Lowrey questioned Whalen about his appearance, Whalen gave conflicting answers. Whalen also admitted that he had walked past the Isuzu before the attempted theft, and the vehicle he had been driving was discovered nearby. Looking at the facts in the light most favorable to the State, the jury could have reasonably concluded that Whalen was the person Taylor discovered attempting to steal the Isuzu and that he ran into the river to hide until the police left.

II.    APPEARANCE OF FAIRNESS DOCTRINE

Whalen next argues that the trial judge violated the appearance of fairness doctrine because the judge failed to disclose that he had previously represented Whalen. Whalen waived

4

this challenge by not objecting at trial. RAP 2.5(a). In fact, the record indicates that Whalen was attempting to use his prior relationship with the judge to obtain leniency.

In any case, the mere fact that Judge Lawler may have represented Whalen many years ago raises no reasonable question about his impartiality in the present case. Judges in smaller jurisdictions often have some acquaintance with those appearing before them and should only disqualify themselves when there is something about their relationship with or knowledge about a party that raises a reasonable question about impartiality. CJC 2.11(A). Judges have a duty to hear cases and not disqualify themselves unnecessarily. *See* CJC 2.7.

III.    SAG

Finally, in his SAG, Whalen argues that his counsel was ineffective and that his statements to Lowrey should have been suppressed. Neither of these issues requires reversal.

A.    Ineffective Assistance

Whalen asserts that his counsel was ineffective because counsel did not present a defense and did not object to the jury seeing Whalen in restraints. He fails to demonstrate ineffective assistance on either issue.

Under the *Strickland*[2] test, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). Performance is deficient only if it "[falls] below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Deficient performance is prejudicial only if the defendant shows that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at

---

[2] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Grier*, 171 Wn.2d at 34 (quoting *Strickland*, 466 U.S. at 694). Failure to satisfy either prong of the test defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 697.

Whalen cannot satisfy the prejudice prong for either issue. He does not argue, nor does the record indicate, that there were any witnesses or evidence that would have changed the outcome of the case if only counsel had called the witnesses or offered the evidence. Thus, he was not prejudiced by counsel's decision to rest at the close of the State's case. Furthermore, there is no evidence in the record that the jury saw Whalen in restraints. There is also no evidence that counsel was even aware or made aware that jurors may have seen Whalen in restraints. *See State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998) (a defendant must show that the restraints "had a substantial or injurious effect or influence on the jury's verdict"). Counsel was not ineffective.

B.      Suppression

Whalen next contends that his statements to Lowrey violated his *Miranda*[3] rights and they should have been suppressed. After the CrR 3.5 hearing, the trial court concluded that all of Whalen's statements to Lowrey were made prior to his arrest and that Whalen was not in custody at the time he made the statements. Therefore, *Miranda* protections did not apply. We affirm the trial court.

In deciding whether *Miranda* warnings were necessary, courts must determine whether the defendant was (1) in custody and (2) subject to interrogation. *State v. Grogan*, 147 Wn. App. 511, 517, 195 P.3d 1017 (2008). "A defendant is in custody for the purposes of *Miranda* when

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

his or her freedom of action is curtailed to a 'degree associated with formal arrest.'" *Grogan*, 147 Wn. App. at 517 (quoting *State v. Solomon*, 114 Wn. App. 781, 787, 60 P.3d 1215 (2002)).

Here, the trial court correctly concluded that Whalen's freedom was not curtailed to a degree associated with formal arrest. Lowrey was the only officer present. He and Whalen were conversing outside near the field where Lowrey saw Whalen. Lowrey did not block Whalen's path, handcuff him, arrest him, or tell him he was not free to leave. Because Whalen was not in custody when he spoke with Lowrey, the trial court correctly denied Whalen's suppression motion.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Maxa, J.

Lee, J.

7