# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47153-1-II |
| Respondent, | |
| v. | |
| RAYMOND LEE CHANNEL, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Raymond Lee Channel appeals from his conviction for felony driving under the influence (DUI).[1] We conclude that sufficient evidence supports the conviction and that Channel received a fair trial. Additionally, the trial court committed harmless error by failing to enter written findings of fact and conclusions of law after a CrR 3.5 hearing, correctly admitted Channel's statements, and properly instructed the jury. Finally, Channel fails to establish prejudice in his ineffective assistance of counsel claim. We affirm the conviction; however, because the State concedes that Channel's sentence exceeds the statutory maximum, we remand for resentencing. At resentencing, the trial court shall conduct an individualized inquiry into Channel's ability to pay discretionary legal financial obligations (LFOs).

---

[1] RCW 46.61.502.

FACTS

I. STOP AND ARREST

At approximately 11:30 PM on July 16, 2014, Officer Timothy Huycke observed a vehicle with a nonworking headlight and a broken taillight. Huycke activated his emergency lights to pull the vehicle over for the infractions.

The driver, Channel, pulled to the side of the road. According to Huycke, Channel pulled to the side with a "quick jerk to the right and [a] quick slam on the brakes." Report of Proceedings (RP) (Dec. 9, 2014) at 87. Huycke requested Channel's license, proof of insurance, and registration. Channel gave him his identification (ID) card and insurance only. Huycke observed several signs indicating Channel might have been intoxicated, including Channel fumbling with his ID card, failing to follow instructions, smelling of alcohol, displaying bloodshot and watery eyes, and slurring his speech. Before leaving the immediate area of the driver, Huycke asked Channel how much he had to drink that night. Channel replied, "[T]oo much." RP (Dec. 9, 2014) at 89.

Huycke asked Channel to get out of the car and noted that Channel swayed and did not walk "exactly straight." RP (Dec. 9, 2014) at 90. Huycke conducted three field sobriety tests: the horizontal gaze nystagmus (HGN) test, the one-leg stand test, and the walk-and-turn test. All the clues were present for each test, indicating Channel was under the influence of alcohol. While administering the HGN and one-leg stand tests, Huycke observed Channel "swaying." RP (Dec. 9, 2014) at 96. Huycke had not yet placed Channel under arrest, Channel was not in handcuffs, and Huycke did not draw his weapon. However, Channel was not free to leave.

Huycke placed Channel under arrest for DUI and transported him to the Cowlitz County Jail. After Channel received his *Miranda*[2] rights and waived them, Huycke asked Channel questions from the DUI arrest report. Channel answered all the questions except 26 through 29, to which he responded, "Rather not answer." RP (Dec. 9, 2014) at 40-41. In response to question 30, Channel indicated his ability to drive was not affected by alcohol. Channel also told Huycke that he previously had a broken hip. Channel declined to take a BAC (blood alcohol concentration) breath test at the jail.

II.      PRETRIAL

The State charged Channel with felony DUI (count I), driving while license suspended or revoked in the first degree (DWS 1) (count II), and violation of ignition interlock device requirement (count III). Channel pleaded guilty to counts II and III.

Prior to trial, the court heard motions in limine and held a hearing pursuant to CrR 3.5. Among other motions, Channel moved to prohibit testimony that he refused a portable breathalyzer test (PBT). The State informed the court it "ha[d] no plans on eliciting any information about the [PBT]." RP (Dec. 9, 2014) at 31. The court granted the motion.

The State called Huycke as the only witness at the pretrial motions. Huycke testified consistent with the facts stated above. The trial court summarized Huycke's testimony and stated the facts on which it was basing its ruling. The trial court ruled that because of an agreed motion in limine,[3] the responses to questions 26 through 29 were excluded. The trial court also ruled that

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] The motion prohibited "any testimony regarding questions [Channel] chose not to answer after being [M]irandize." CP at 46.

Channel's statement at his vehicle to Huycke, and Channel's response to question 30 of the DUI arrest report were admissible.

II.     TRIAL

At trial, Huycke testified to the above facts.  He also explained that field sobriety tests assess a person's coordination, ability to follow instructions, balance, and multi-tasking skills. Huycke stated that "if a person is under the influence of alcohol, sometimes the—their multi-tasking skills are deteriorated, and, obviously, that affects the ability to drive a vehicle, since it involves multi-tasking."  RP (Dec. 9, 2014) at 91.  Based on Huycke's training, experience, observations, and the field sobriety tests, in his opinion, "[Channel] was definitely under the influence of alcohol."  RP (Dec. 9, 2014) at 105.

Asa Louis, a scientist with the Washington State Patrol's Forensic Toxicology Laboratory, testified about the effects alcohol, a depressant, has on the central nervous system, cognitive skills, motor skills, and memory.  He explained that alcohol can cause a person's eyes to be bloodshot and water, or a person's face to flush.  Alcohol first impacts "high cognitive skill[s]" and then "more obvious skills," such as fine motor skills, finger dexterity, and the ability to multi-task.  RP (Dec. 9, 2014) at 155.  He stated that depressants may hamper a person's cognitive ability and other skills.  He also stated that as a person drinks more alcohol, more skills will be impaired. Louis described driving as a "complex divided-attention activity," meaning a skill that requires collection and response to many inputs and variables at the same time.  RP (Dec. 9, 2014) at 156. He testified that all of the field sobriety tests are considered "simple divided-attention tests."  RP (Dec. 9, 2014) at 164.

Officer Ken Hardy, the officer who searched Channel's impounded car, found nine cans of unopened Natural Light beer in a twelve-pack container inside the vehicle.  Hardy also responded

to the scene of Channel's arrest and, when asked what was happening when he arrived, said, "Huycke was talking to the Defendant. I believe he was taking a PBT sample." RP (Dec. 9, 2014) at 170. Channel objected before Hardy finished the sentence.

Outside the jury's presence, defense counsel argued Hardy's statement violated the motion in limine. The State responded that the "question was not intended to elicit any information about the PBT."[4] RP (Dec. 9, 2014) at 171. The court stated defense counsel had mentioned he wanted to take a moment to speak with his client about potential motions and granted a brief recess for that purpose. The parties reconvened approximately six minutes later. Defense counsel did not make any motions at that time, stating he would wait for the court's ruling on the objection. The court sustained the objection and struck the statement. The court called the jury back, instructed it to disregard Hardy's statement, and then dismissed it for the day. Defense counsel made no further motions.

On the morning of the second day of trial, Channel stipulated to his prior conviction for vehicular assault under the influence,[5] which elevated his current DUI charge to a felony. The State rested, and Channel moved to dismiss. Channel argued that the State failed to provide sufficient evidence that his "ability to drive a motor vehicle is, or was lessened in any appreciable degree." RP (Dec. 9, 2014) at 30. The court denied the motion.

Channel testified that he bought a twelve-pack of Natural Light beers earlier in the day and had three to four while doing yard work. His best guess was that he consumed the beers around 5:30 or 6:00 in the evening. Channel also explained that his eyes were red because he had allergies from cats at his friend's house and because he smoked in the house and the truck. Channel told

---

[4] No other mention was made of "PBT" throughout the trial.

[5] RCW 46.61.522(1)(b)

the jury that his previously broken pelvis, which required surgery in 2009, affected his performance on the field sobriety tests.

Channel did not dispute Huycke's version of what happened during the field sobriety tests. However, Channel recalled telling Huycke about the surgery right after the one-leg stand test. According to Channel, he also told Huycke he had three or four drinks. And rather than saying, "[T]oo much," Channel recalled saying, "Not too much." RP (Dec. 10, 2014) at 46.

Defense counsel proposed a jury instruction that read, "You may give such weight and credibility to any alleged out-of-court statements of the defendant as you see fit, taking into consideration the surrounding circumstances."[6] Clerk's Papers (CP) at 44. The State argued against giving the instruction because another instruction informed the jury how to assess the weight it should give the evidence. The State also suggested the instruction would give undue weight to one witness's testimony over others. The court then determined the proposed instruction was duplicative of another instruction[7] and that giving it would place extra emphasis on Channel's testimony. The court declined to give the instruction. Defense counsel excepted to the court's failure to give the instruction.

The jury found Channel guilty of DUI and, by special verdict, that he refused to submit to a breath test.

At sentencing, the court calculated Channel's offender score to be 8. It sentenced Channel to 60 months of incarceration and 12 months of community custody for the felony DUI, consecutive to 364 days of incarceration, with 334 days suspended, each for DWS 1 and the

---

[6] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 6.41, at 196 (3d ed. 2008).

[7] WPIC 1.02, at 14 (3d ed. 2008).

ignition interlock device violation, which ran concurrent with each other. The court did not discuss the imposition of LFOs on the record but ordered a total of $2,025.[8] Channel did not object during the sentencing hearing. Channel appeals.

## ANALYSIS

I.     SUFFICIENCY OF THE EVIDENCE

Channel argues the State failed to produce sufficient evidence to prove his driving was impaired and that he drove under the influence of alcohol. We disagree.

A.     Standard of Review

When reviewing whether sufficient evidence supports a criminal conviction, we view the evidence in the light most favorable to the State to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). We weigh all reasonable inferences from the evidence in the State's favor. *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Circumstantial evidence is no less reliable than direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

B.     Driving Under the Influence

Channel contends the evidence does not support an inference that he was under the influence of alcohol. "A person is guilty of driving while under the influence of intoxicating liquor . . . if the person drives a vehicle within [Washington] . . . [w]hile the person is under the influence of or affected by intoxicating liquor." RCW 46.61.502(1)(c). The State must prove the

---

[8] In LFOs, the court ordered a $500 victim assessment fee, a $200 criminal filing fee, a $250 jury demand fee, $150 incarceration fee, a $825 court appointed attorney fee, and a $100 DNA collection fee.

defendant's "'ability to handle an automobile was lessened in an appreciable degree by the consumption of intoxicants or drugs.'" *Peralta v. State*, 191 Wn. App. 931, 946, 366 P.3d 45 (2015) (quoting *State v. Wilhelm*, 78 Wn. App. 188, 193, 896 P.2d 105 (1995)). Refusal to submit to a breath test is admissible in subsequent criminal prosecutions. RCW 46.61.517. "The rationale for admission of refusal evidence is that a refusal to take the test demonstrates the driver's consciousness of guilt." *State v. Cohen*, 125 Wn. App. 220, 224, 104 P.3d 70 (2005).

Taken in the light most favorable to the State, the evidence demonstrated the following: Channel "abrupt[ly]" pulled his car over in response to Huycke's emergency lights. RP (Dec. 9, 2014) at 87. Channel jerked the car to the right side and slammed on the brakes. When asked for his license, registration, and insurance, Channel only provided his ID card and proof of insurance, and he fumbled with his ID card. Channel's breath smelled of intoxicants, his eyes were bloodshot and watery, and his speech was slurred. Channel said he had "too much" to drink and, upon exiting his vehicle, he swayed and did not walk "exactly straight." RP (Dec. 9, 2014) at 89, 90.

The evidence also showed that Channel failed three field sobriety tests: the HGN test, the one-leg stand test, and the walk-and-turn test. He swayed during two of them. The tests are designed to assess a person's coordination and balance, ability to follow instructions, and ability to multi-task. A person under the influence of alcohol may have deteriorated multi-tasking skills, which affect the ability to drive a vehicle. Alcohol first impacts high cognitive skills and then fine motor skills, finger dexterity, and the ability to multi-task. Channel declined to take a breath test at the jail, and Huycke opined that "[Channel] was definitely under the influence of alcohol." RP (Dec. 9, 2014) at 105.

In his arguments, Channel compartmentalizes the evidence and asks us to view the evidence in the light most favorable to him. He argues that nine unopened cans of beer in the car was insufficient to show he was under the influence. Channel also argues the odor of alcohol was insufficient to meet the State's burden. However, as outlined previously, other evidence existed.

Channel also argues there is no proof of bad driving. However, "proof of erratic driving is not required to convict [a person] of driving under the influence." *State v. Gillenwater*, 96 Wn. App. 667, 670, 980 P.2d 318 (1999). The State had to prove Channel's ability to handle an automobile was lessened in an appreciable degree by his consumption of alcohol. *Peralta*, 191 Wn. App. at 946.

Viewing the evidence in the light most favorable to the State and deferring to the jury's credibility determinations, we conclude the State provided sufficient evidence to prove Channel's ability to operate his vehicle was lessened in an appreciable degree by his consumption of alcohol.

II. RIGHT TO A FAIR TRIAL

Channel next argues that Hardy's response about the PBT to the State's question violated a motion in limine and Channel's right to a fair trial. Assuming without deciding that the State violated a motion in limine, we conclude the error was not prejudicial.

The jury's verdict in a criminal case will be set aside and a new trial granted only if the asserted error is prejudicial. *State v. Latham*, 30 Wn. App. 776, 781, 638 P.2d 592 (1981) *aff'd*, 100 Wn.2d 59, 667 P.2d 56 (1983). An error is prejudicial if it affects, or presumptively affects, the final result of the trial. *Latham*, 30 Wn. App. at 781. We presume that juries follow the court's instructions. *State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001). When a defendant's guilt is "consistently proven by competent evidence" and "no other rational conclusion [could] be reached," we do not set aside a conviction. *Latham*, 30 Wn. App. at 781.

Channel argues he was prejudiced because the mere mention of a PBT would lead the jury to question why the results were not presented at trial. And because of defense counsel's objection, the jury would assume that the results were adverse. He contends that the implication to the jury would be that Channel declined the breath test because he took a PBT, and the results were incriminating. He also argues that the trial came down to a credibility contest and "any evidence suggesting [Channel] was seeking to withhold information from the jury would most certainly weigh heavily against him." Br. of Appellant at 16.

When Hardy mentioned the PBT, defense counsel objected, and the court instructed the jury to disregard Hardy's response. We presume the jury followed the court's instructions, *Stein*, 144 Wn.2d at 247, and conclude that Channel's guilt was proven by competent sufficient evidence. Any "irregularity" was cured by the court's instruction to the jury and as a result, Channel has not demonstrated prejudice.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Channel argues that the trial court erred by not entering written findings of fact and conclusions of law after the CrR 3.5 hearing. The State concedes that the failure to enter findings was error but argues it was harmless because the court's oral findings are sufficient to allow our review. We agree with the State.

### A. Standard of Review

CrR 3.5(c) mandates that "[a]fter the [CrR 3.5] hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor." However, we consider the absence of findings of fact harmless if the trial court's oral opinion is clear and comprehensive and written findings would be just a formality. *State v. Trout*, 125 Wn. App. 403,

415, 105 P.3d 69 (2005). Failure to comply with CrR 3.5's writing requirement is harmless if the trial court's oral findings are sufficient to allow appellate review. *State v. Grogan*, 147 Wn. App. 511, 516, 195 P.3d 1017 (2008). We do not reverse for lack of findings unless there is a showing of prejudice. *State v. Thompson*, 73 Wn. App. 122, 130, 867 P.2d 691 (1994).

    B.     Harmless Error

Channel contends he was prejudiced because the trial court said the question of whether Channel was in custody when Huycke initially stopped him was "close," and because the court's opinion was not "clear and comprehensive." Br. of Appellant at 22, 23. Despite the trial court's error in not entering written findings of fact and conclusions of law, there is a clear record for us to review. Huycke was the sole witness at the hearing and no facts were in dispute.[9] The trial court made oral findings by summarizing Huycke's testimony, stated the testimony it relied on, interpreted the testimony, explained its rationale for the decision, and clearly stated its conclusions as to each statement. The findings are in accord with the testimony at the hearing.

Although the trial court stated that the legal conclusion as to custodial interrogation was "close," it explained that Huycke's testimony persuaded it to conclude the statement was admissible. RP (Dec. 9, 2014) at 53. The trial court also clearly stated its reasons for keeping Channel's answers to questions 26 through 29 out of evidence, but allowing Channel's answer to question 30. Because the court's oral ruling is a clear record for us to review, Channel was not prejudiced by the lack of written findings and conclusions.

---

[9] Channel states in his brief that he testified at the CrR 3.5 hearing. This does not appear accurate based on the record.

IV.     CRR 3.5 MOTION

Channel argues the trial court erred when, after a hearing pursuant to CrR 3.5, it ruled Channel's statements to Huycke were admissible. He contends that his statement at the vehicle was made during custodial interrogation, and his statement at the jail was made after he invoked his right to remain silent. We disagree.

A.      Standard of Review

The Fifth Amendment protects a defendant against self-incrimination. U.S. CONST. amend. V. "*Miranda* warnings were developed to protect a defendant's constitutional right not to make incriminating confessions or admissions to police while in the coercive environment of police custody." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). "Without *Miranda* warnings, a suspect's statements during custodial interrogation are presumed involuntary." *Heritage*, 152 Wn.2d at 214. Therefore, courts must first determine whether a defendant was in custody for the purposes of *Miranda*. *See State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013). We review a trial court's custodial determination de novo. *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004).

If *Miranda* warnings are necessary, police officers must advise the accused of his right to counsel and right against self-incrimination before custodial interrogation begins. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We review the question of whether a defendant invoked his right to remain silent as a mixed question of law and fact, ultimately reviewed de novo. *State v. I.B.*, 187 Wn. App. 315, 319-20, 348 P.3d 1250 (2015).

B.      Custodial Interrogation

Channel argues he was in custody at the time Huycke took his ID card and registration, and that Huycke should have read him his *Miranda* rights before questioning him. He submits that his statement to Huycke at the vehicle should have been suppressed.

We use an objective test to determine whether a person was in custody for purposes of *Miranda*. *Lorenz*, 152 Wn.2d at 36-37. "'Custody' for *Miranda* purposes is narrowly circumscribed and requires 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *State v. Post*, 118 Wn.2d 596, 606, 826 P.2 172, 837 P.2d 599 (1992) (internal quotation marks omitted) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984)). We look at the circumstances surrounding the interrogation and decide whether a reasonable person would have felt that he was free to terminate the interrogation and leave. *State v. Templeton*, 148 Wn.2d 193, 208, 59 P.3d 632 (2002).

A routine traffic stop, such as a *Terry*[10] stop, curtails the freedom of a motorist such that a reasonable person would not feel free to leave the scene. *Heritage*, 152 Wn.2d at 218. However, the United States Supreme Court has recognized that "because both traffic stops *and* routine *Terry* stops are brief, and they occur in public, they are 'substantially less police dominated' than the police interrogations contemplated by *Miranda*." *Heritage*, 152 Wn.2d at 218 (internal quotations omitted) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)). Washington courts have also determined that a routine *Terry* stop is not custodial for the purposes of *Miranda*, and that an officer "may ask a moderate number of questions during a *Terry* stop to determine the identity of the suspect and to confirm or dispel the officer's suspicions without rendering the suspect 'in custody.'" *Heritage*, 152 Wn.2d at 218 (quoting *Berkemer*, 468

---

[10] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

U.S. at 439-40). "'[T]he detainee is not obliged to respond.'" *State v. Walton*, 67 Wn. App. 127, 130, 834 P.2d 624 (1992) (quoting *Berkemer*, 468 U.S. at 439).

Huycke pulled Channel over for an infraction at 11:30 PM. When Huycke first asked for Channel's driver's license and proof of insurance, he was not conducting a DUI investigation. It was at that point, then that Huycke observed Channel's bloodshot, watery eyes, and slurred speech. Huycke asked Channel about his drinking and received the contested response.

During a *Terry* stop, an officer is permitted to "'ask a moderate number of questions'" to determine identification and assess whether the individual is safe to drive. This inquiry does not mean the individual is in custody. *Heritage*, 152 Wn.2d at 218 (quoting *Berkemer*, 468 U.S. at 439-40). Huycke asked one question designed to confirm or dispel his suspicions that Channel drove while intoxicated. Thus, we conclude Channel was not in a custodial arrest situation, and the trial court did not err by admitting the statement.

C.      Right to Remain Silent

Channel also argues his answer to the DUI arrest report question after he responded, "[R]ather not answer," should have been suppressed because he unequivocally invoked his right to remain silent. Br. of Appellant at 19-20. We disagree.

"[T]he invocation of the right to remain silent must be clear and unequivocal (whether through silence or articulation) in order to be effectual; if the invocation is not clear and unequivocal, the authorities are under no obligation to stop and ask clarifying questions, but may continue with the interview." *State v. Walker*, 129 Wn. App. 258, 276, 118 P.3d 935 (2005). "The test as to whether a suspect's invocation of his right to remain silent was unequivocal is an objective one, asking whether 'a reasonable police officer in the circumstances would understand the statement' to be an invocation of *Miranda* rights." *I.B.*, 187 Wn. App. at 321 (internal

quotations omitted) (quoting *State v. Piatnitsky*, 180 Wn.2d 407, 413, 325 P.3d 167 (2014), *cert. denied*, 135 S. Ct. 950 (2015)).

The DUI arrest report contained at least 30 questions. Huycke read Channel his *Miranda* rights, Channel waived them and signed the waiver. Channel answered questions 26 through 29, "Rather not answer." RP (Dec. 9, 2014) at 40-41. These responses are not an unequivocal assertion of his right to remain silent. They are equivocal and address those specific questions only. The final question was whether Channel believed his ability to drive was affected by alcohol, to which he answered, "[N]o." RP (Dec. 9, 2014) at 41.

Viewing Channel's statements in the context of the entire interaction, a reasonable police officer would not necessarily assume the answer, "Rather not answer," to several questions was an unequivocal invocation of the right to remain silent as to all questions. RP (Dec. 9, 2014) at 40-41; *see Walker*, 129 Wn. App. at 274 (holding the defendant did not invoke his right to remain silent where he "did not tell the police that he wished to remain silent, but instead said that he did not want to say anything that would make him look guilty or incriminate him," and then continued to talk with officers further).

We conclude Channel did not unequivocally invoke his right to remain silent. Therefore, the trial court did not err by admitting the statement.

V.     JURY INSTRUCTIONS

Channel argues the trial court erred and prejudiced him when it declined to give his requested jury instruction relating to a defendant's out-of-court statements. He specifically contends that he was prejudiced because his own statements were offered during the trial. We disagree.

A.     Standard of Review

We review a trial court's refusal to give jury instructions for abuse of discretion. *State v. Buzzell*, 148 Wn. App. 592, 602, 200 P.3d 287 (2009).  A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).  Each instruction is "'evaluated in the context of the instructions as a whole.'"  *State v. France*, 180 Wn.2d 809, 816, 329 P.3d 864 (2014) (quoting *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993)).  A trial court does not err by refusing to give "a cumulative instruction or one collateral to or repetitious of instructions already given." *Benn*, 120 Wn.2d at 655.

B.     Abuse of discretion

Channel requested that the court give the following instruction: "You may give such weight and credibility to any alleged out-of-court statements of the defendant as you see fit, taking into consideration the surrounding circumstances." CP at 44.  The court determined that the instruction was duplicative of another instruction and placed undue emphasis on the defendant's testimony.

The court did instruct the jury using this standard instruction:[11]

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

---

[11] WPIC 1.02.

CP at 53. Channel contends that the trial court's decision to not give his instruction hindered his ability to counter the State's version of what his alleged statement meant. However, Channel does not point to how he was prevented from making his argument. Additionally, Channel fails to show how the ruling prejudiced him. The trial court determined Channel's proposed instruction was cumulative and placed undue emphasis on the defendant's statements. We conclude that the trial court did not abuse its discretion when it determined the standard instruction fully informed the jury of its role in weighing statements, and that it need not give Channel's proposed instruction because it was cumulative.

VI.     INEFFECTIVE ASSISTANCE OF COUNSEL

Channel contends that he was denied effective assistance of counsel because his counsel failed to propose a limiting instruction, and failed to move for a mistrial. We disagree.

A.      Standard of Review

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prove ineffective assistance of counsel, an appellant must show that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness and that (2) the deficient performance prejudiced him, to the extent that there is a reasonable probability the deficient performance affected the outcome of the trial. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700

We determine counsel's competency based upon the entire record below. *State v. White*, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972). To prevail on an ineffective assistance claim, a defendant alleging ineffective assistance must overcome "a strong presumption that counsel's

17

performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863.

B.      Limiting Instruction

Channel argues his counsel was ineffective because he failed to request and propose a limiting instruction on the breath test refusal evidence. He contends prejudice resulted because "[g]iven the paucity of evidence presented, it is likely that the jury would have acquitted [Channel] of [the] DUI." Br. of Appellant at 27.

Channel does not postulate what the instruction would have limited and thus, cannot demonstrate prejudice. In *State v. Long*, 113 Wn.2d 266, 268-69, 778 P.2d 1027 (1989), the Washington Supreme Court interpreted former RCW 46.61.517 (1986), the statute governing admissibility of breath test refusal evidence. RCW 46.61.517 states, "The refusal of a person to submit to a test of the alcohol or drug concentration in the person's blood or breath under RCW 46.20.308 [the implied consent statute] is admissible into evidence at a subsequent criminal trial."[12] The court in *Long* held,

> While we retain our power to determine the relevancy and thus the admissibility of certain types of evidence, we perceive no valid reason not to accept the Legislature's recognition of relevancy in this instance. . . . This is not to say, however, that depending on the facts of the particular case, the trial court may not exclude such evidence if the probative value of such evidence is found to be substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.

---

[12] Amendments in 1987 and 2001 to this statute do not affect the applicability of this case to our analysis here.

113 Wn.2d at 272. Finally, the court held, "We see no satisfactory reason not to follow the Legislature's now clear intent of rendering refusal evidence fully admissible in a criminal trial for driving while under the influence of intoxicants." *Long*, 113 Wn.2d at 272-73.

Because Channel does not argue how the evidence would have been limited, it is far from clear whether the trial court would have granted such an instruction. For this reason, and for the reasons laid out in the sufficiency of the evidence section above, we conclude that Channel fails to demonstrate prejudice, and his claim fails.

C.     Mistrial

Channel also argues he received ineffective assistance of counsel because his counsel failed to move for a mistrial after Hardy testified about the PBT. Channel contends there was no conceivable tactical reason for this inaction. Again, we disagree.

When Hardy testified about the PBT, defense counsel immediately objected. After argument and a short recess, defense counsel stated no motions would be made at that time, and he would wait for the court's ruling on the objection. The court sustained the objection and instructed the jury to disregard Hardy's statement. We presume the jury follows the court's instructions. *Stein*, 144 Wn.2d at 247. Defense counsel made no further motions. Based on the record before us, defense counsel's conduct was not deficient.

A mistrial is only appropriate when, viewed in light of all the evidence, the defendant has been so prejudiced that nothing short of a new trial will insure that the defendant receives a fair trial. *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002). To show prejudice from counsel's failure to request a mistrial, Channel must show that the mistrial would have been granted, which he cannot do.

Whether an irregularity justifies a mistrial depends on three factors: (1) whether the irregularity was serious enough to materially affect the trial's outcome, (2) whether the statement in question was cumulative of other evidence, and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction the jury is presumed to follow. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). Even serious irregularities can be cured by an instruction to disregard. *See State v. Gamble*, 168 Wn.2d 161, 178-79, 225 P.3d 973 (2010). Based on the other evidence available to the jury and the court's instruction to disregard Hardy's statement, we conclude it is unlikely the trial court would have granted a mistrial. Consequently, we hold that Channel received effective assistance of counsel.

VII.     SENTENCING

Channel argues that the trial court imposed a sentence that exceeds the five year statutory maximum for his DUI conviction. The State concedes that Channel is correct. RCW 9.94A.701(9) provides, "The term of community custody . . . shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime." Felony DUI is a class C felony and the statutory maximum for a class C felony is five years. RCW 46.61.502(6); RCW 9A.20.021(1)(c). The sentence of 60 months of incarceration, in addition to 12 months of community custody exceeds five years. We remand to the trial court for resentencing.

Channel also argues that the trial court erred by imposing discretionary LFOs without conducting an individualized inquiry into his ability to pay. We note that the court did not put the imposition of LFOs or an inquiry into Channel's ability to pay on the record. Channel also did not object. While normally, we exercise our discretion to not review an unpreserved LFO error on appeal, consistent with our opinion in *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492

(2013), because we are remanding for resentencing, we also direct the trial court to properly conduct an individualized inquiry into Channel's current and future ability to pay on the record. *See State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015).

We affirm Channel's convictions but remand for resentencing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Lee, J.